# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARON JAMAL BELL, | |
| *Plaintiff*, | |
| v. | 23-cv-02036 (RC) |
| DISTRICT OF COLUMBIA, | |
| *Defendant*. | |

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant District of Columbia (the District) respectfully moves to dismiss the Amended

Complaint under Fed. R. Civ. P. 41(b) and 12(b)(6) for the reasons discussed in the attached

Memorandum of Points and Authorities.  A proposed order is also attached.

Date:  August 9, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

/s/ *Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

/s/ *David B. Jastrab*
DAVID B. JASTRAB [1048299]
LIRAN KOROPITZER [90005151]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov
*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| BARON JAMAL BELL, |
| *Plaintiff*, |
| v. |
| DISTRICT OF COLUMBIA, |
| *Defendant*. |

23-cv-02036 (RC)

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**INTRODUCTION**

Plaintiff Baron Jamal Bell sues Defendant District of Columbia (the District) for claims
related to his prior employment at the HIV/AIDS, STD, Tuberculosis, and Hepatitis
Administration, a subdivision of the District of Columbia Department of Health (DOH), and his
termination from that agency in 2022. His 66-page, 251-paragraph (not including the "statement
of the claim" and prayer for relief) Amended Complaint suffers from the same flaws that the
Court cited as grounds to dismiss his original complaint for failure to comply with Fed. R. Civ.
P. 8. *See* June 5, 2024 Mem. Op. at 8–13 (Mem. Op.) [16]. Like the original complaint, the
Amended Complaint is "overly lengthy and meandering," *id.* at 8, and the "excessively lengthy
recitation of events and myriad seemingly irrelevant descriptions" make it "nearly impossible to
discern the *essential* facts that underlie [Mr. Bell's] legal claims," *id.* at 10 (quoting *Jiggetts v.
District of Columbia*, 319 F.R.D. 408, 415 (D.D.C. 2017), *aff'd sub nom. Cooper v. District of
Columbia*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017)). Moreover, although the
Amended Complaint's "lack-of-clarity problem," *id.* at 12 (quoting *Jiggetts*, 319 F.R.D. at 417),

places an undue burden on the District and the Court and warrants dismissal, it is still apparent

that Plaintiff's claims fail under Rule 12(b)(6).

## FACTS

"[T]he [Amended] Complaint is sprawling, and it is not easy to discern the essential facts

underlying Mr. Bell's claims."  Mem. Op. 2.  With the aid of prior pleadings and briefings, some

factual allegations are just clear enough to summarize.  Plaintiff saw a female coworker "accused

of making no sense by DC government employee Ivan Eaton, when making perfectly good

sense," which he considered "a threat to a dignified and humane work environment with

reasonable conditions of employment."  Am. Compl. ¶¶ 12–13.  Plaintiff alleges that he made an

informal "demand[] [that] the issue be addressed," *id.*, prompting Eaton and colleague Sherita

Grant to respond by concocting a "retaliation scheme," *id.* ¶¶ 18, 28, that tarred Plaintiff's

reputation, *e.g.*, *id.* ¶¶ 17–19, made him feel unsafe at work, *e.g.*, *id.* ¶¶ 38, 40, and ultimately led

to his termination from District employment, *id.* ¶ 70.  This scheme, Plaintiff alleges, included

multiple meetings in which the agency sought assurance that Plaintiff did not intend to cause

physical harm to any District employees, *id.* ¶ 29; Plaintiff's placement in absent-without-leave

status after his unilateral decision to avoid the workplace for an extended period, *id.* ¶ 34–37; a

protective order from the Maryland District Court of Prince George's County based on a petition

filed by Grant, predicated in part on a private email that Plaintiff had sent Grant, which she had

sent to agency officials; and Plaintiff's eventual termination, *id.* ¶ 70.  Plaintiff asserts 15 claims:

three under 42 U.S.C. § 1983 (Count I under the First Amendment, Count II under the Fourth

Amendment, and Count III under the Fifth Amendment), one claim under the D.C.

Whistleblower Protection Act, D.C. Code § 1-615.51, *et seq.* (DCWPA) (Count IV), six other

employment law claims brought under District law (Counts V through VII under the D.C.

Human Rights Act, D.C. Code § 2-1401, *et seq.* (DCHRA), Count VIII under the Comprehensive

Merit Personnel Act, D.C. Code § 1-603.01, *et seq.* (CMPA), Count IX for constructive

discharge, and Count X for hostile work environment), and five common law tort claims

(Count XI for intentional infliction of emotional distress, Count XII for libelous defamation,

Count XIII for invasion of privacy false light, Count XIV for negligence, and Count XV for

wrongful termination).

**STANDARD OF REVIEW**

**<u>Fed. R. Civ. P. 8</u>**

Federal Rule of Civil Procedure 8(a) mandates that a complaint "contain . . . a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). And under Rule 8(d)(1), "[e]ach allegation must be simple, concise, and direct." Fed.

R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on

clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C.

Cir. 2004) (citation and internal quotation marks omitted). Rule 8 "sets out a minimum standard

for the sufficiency of complaints" "to give fair notice of the claim[s] being asserted" and the

grounds upon which they rest, "so as to permit the adverse party the opportunity to file a

responsive answer, prepare an adequate defense and determine whether the doctrine of *res

judicata* is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that the

requirements of Rule 8 are meant "to give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests" (citation and internal quotation marks omitted)).

"[W]hat is the proper length and level of clarity for a pleading . . . is largely a matter that

is left for the discretion of the trial court" and varies from case to case depending on "the nature

of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters.'" *Jiggetts*, 319 F.R.D. at 415 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2004)).  "Still, a complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material" will patently fail Rule 8's standard, and so will "a complaint that contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 174 (D.D.C. 2013) (citations and internal quotation marks omitted).  The Court may dismiss a pleading or an action if it fails to comport with the standards of Rule 8.  *See* Fed. R. Civ. P. 41(b); *see also Ciralsky*, 355 F.3d at 669; *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69 (D.D.C. 2015).

**Fed. R. Civ. P. 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate when a party has failed to set forth "a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  While allegations in a complaint must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011).  Courts need not accept as true "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 679.  This also means that the Court is not bound to adopt "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Comms. Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Once a

pleading is stripped of allegations not entitled to the presumption of truth, the court can analyze the remaining factual allegations to determine if they state a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570; *JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 520 (D.D.C. 2014). "But raising a 'sheer possibility that a defendant has acted unlawfully' fails to satisfy the facial plausibility requirement." *JSC Transmashholding*, 70 F. Supp. 3d at 520 (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 520–21.

On a motion to dismiss, courts may consider documents attached as exhibits or incorporated by reference in the complaint or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff but by the defendant. *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 135-36 (D.D.C. 2015); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). In this case, because Plaintiff must provide notice under D.C. Code § 12-309 before bringing any tort action for unliquidated damages against the District, the Court may consider the declaration attesting to Plaintiff's non-compliance with § 12-309 attached to the District's prior motion to dismiss and email to Plaintiff's prior attorney's office notifying it of proper § 12-309 procedures without converting the motion to a motion for summary judgment. *See Martin v. District of Columbia*, 720 F. Supp. 2d 19, 25 n.6 (D.D.C. 2010) (considering police reports in evaluating § 12-309 compliance without converting motion to dismiss to motion for summary judgment); *Patrick*, 126 F. Supp. 3d at 135–36 (same); *see also* Def.'s Mot. to Dismiss Ex. 1, Decl. of Lana Craven [5-1]; Def.'s Reply Ex. 2, Email from Lana Craven to David Jastrab (Dec. 1, 2023) [14-1]. So too may the Court consider the email that Plaintiff alleges to be a DCWPA protected disclosure, and the

notice of summary dismissal—which he alleges to be an unlawful action—predicated on that

email.  *See* Def.'s Ex. 3, Email from LaQuandra Nesbitt to Sherita Grant (June 2, 2022) (Grant

Email); Def.'s Ex. 4, Final Decision Summary Removal – Baron Bell (Summary Removal).

Finally, although a court should construe liberally the pleadings of *pro se* plaintiffs, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), *pro se* litigants must still comply with the Federal Rules of

Civil Procedure, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

## ARGUMENT

## I.   <u>Plaintiff's Amended Complaint Violates Rule 8.</u>

Although shorter than the original complaint, the Amended Complaint still does not

comply with Rule 8's requirements of "a short and plain statement of the claim showing that the

pleader is entitled to relief" and "simple, concise, and direct" allegations.  Fed. R. Civ. P. 8(a)(2),

(d)(1).  The Amended Complaint is similar in length to those at issue in *Ciralsky*, 355 F.3d

at 665 (affirming decision of district court to dismiss amended complaint that was "61 pages

long and contained 105 paragraphs," after the district court also dismissed an initial complaint

that was "119 pages long and contained 367 numbered paragraphs"), *Jiggetts*, 319 F.R.D.

at 414–15 (dismissing 78-page amended complaint), and *Unfoldment, Inc. v. District of*

*Columbia*, No. 07-CV-1717, 2007 WL 3125236, at *1 (D.D.C. Oct. 24, 2007) ("368 paragraphs

and eleven footnotes spread over 61 pages").  The pleading's length and verbosity still "stand[]

in contrast to the nature of the dispute," Mem. Op. 9 (citing *Jiggetts*, 319 F.R.D. at 413), which

does not involve "any element of complexity . . . that would justify such a long and excessively

detailed [Amended] Complaint," *id.*

Like the original complaint, the Amended Complaint offers an "excessively lengthy

recitation of events and myriad seemingly irrelevant descriptions," *id.* at 8 (quoting *Jiggetts*, 319

F.R.D. at 415, that make it "a mighty endeavor to understand how the additional allegations connect to [Plaintiff's] legal claims, or how the allegations included under each count should fit into the [Amended] Complaint's overall narrative," *id.* Although the Amended Complaint omits some exposition about the history of the Department of Health's social messaging campaigns, the Declaration of Independence, and the purpose of government, it is still brimming with "'bold conclusions, sharp harangues and personal comments,' rather than actual factual allegations." *Id.* at 10 (quoting *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977)); *see, e.g.*, Am. Compl. ¶¶ 19 (alleging that "senior Management were spreading rumors"), 22 (describing "obvious" motivation behind "childish allegation"), 23 ("obviously biased allegations . . . further violations of his substantive due process and evidenced discriminatory treatment"); 25 (agency decision "demonstrates Management's awareness that Grant's allegations against the Plaintiff were part of her liaison with Eaton," but "instead of safeguarding the Plaintiff from Grant's and Eaton's plot, the Defendant offers the Plaintiff as a sacrifice"); 28 (mediation reveals "even more evidence of Grant's and Eaton's conspiracy and conniving," including "Ms. Grant recall[ing] before everyone, how she and Mr. Eaton schemed to seduce the [union] President to join her on a phone call, while Mr. Eaton listened in secret on another phone line to the entirety of the conversation"); 29 ("Defendant's acquiescence to the plot of Grant and Eaton"); 50 (speculating, with no prior reference to sexual orientation, that "sexual orientation [must have] factored into the Defendant's total indifference to acknowledge, let alone address, his workplace safety concerns").

Like the original complaint, the Amended Complaint "reproduces verbatim the text from dozens of emails and other documents." Mem. Op. 13; *see* Am. Compl. ¶¶ 17, 20, 21, 23–24, 27, 30–32, 36, 38–41, 46–51, 56–62, 65–68, 72–73, 75–77, 85–86, 89, 97, 126–28, 164, 170–71,

184–85, 223.  And, as with the original complaint, the "need to file an answer that addresses

each paragraph in the [Amended] Complaint" would impose a remarkable, and unjustified,

burden on the District,[1] to say nothing of the Court's task of parsing "'seemingly irrelevant and

unnecessary facts' that 'obscure[]' the 'actual factual basis' of Mr. Bell's claims" in an effort to

"evaluate whether those arguments should succeed or fail."  Mem. Op. 11–12 (quoting *Jiggetts*,

319 F.R.D. at 415).

        The Amended Complaint fails to cure the flaws that supported dismissal of Plaintiff's

first pleading.  Once again, it is "excessively long, rambling, disjointed, incoherent, [and] full of

irrelevant and confusing material" and it "contains an untidy assortment of claims that are neither

plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp

harangues and personal comments."  *Id.* at 6 (quoting *T.M. v. District of Columbia*, 961 F. Supp.

2d 169, 174 (D.D.C. 2013)).  The Amended Complaint "fail[s] Rule 8's standard" and should be

dismissed.  *Id.*

## II.    <u>Plaintiff's Amended Complaint Fails Under Rule 12(b)(6).</u>

        Plaintiff's Amended Complaint should be dismissed for violating Rule 8, but, in the

alternative, it is also apparent that Plaintiff's discernible claims cannot withstand scrutiny.[2]

---

[1]    Moreover, the "Factual Allegations" section is laden with legal conclusions, and the "Counts" section includes numerous factual allegations.  *E.g.*, Am. Compl. ¶¶ 21 (factual allegation claiming that "failure to prevent Mr. Eaton from slandering the Plaintiff's reputation was gross negligence and deprived the Plaintiff of substantive due process and of his interest in his reputation"); 35 (factual allegation that "the Defendant again violates the Plaintiff's substantive due process"); 184 (DCHRA count quoting DOH website not quoted in factual allegations and stating that "if not for [Plaintiff's] sexual orientation, the Defendant would have addressed his pleas").  Thus, "requiring the District 'to answer the [Amended] [C]omplaint in its current form would not promote the just, speedy, and inexpensive determination of the action.'"  Mem. Op. 13 (internal quotation marks omitted) (quoting *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 71 (D.D.C. 2015)).

[2]    Because of the length and impenetrability of the Amended Complaint, the District intends to file a more fulsome motion under Fed. R. Civ. P. 12(b)(6) should the Court grant Plaintiff the

A.    **Plaintiff's § 1983 Claims Fail (Counts I through III).**

1.    **Plaintiff Fails to Plead Municipal Liability under § 1983.**

To state a § 1983 claim for a constitutional violation against a municipality such as the District, Plaintiff must show that a District policy or custom was the "moving force behind the alleged constitutional violation." *Parker v. District of Columbia*, 850 F.2d 708, 714 (D.C. Cir. 1988). A municipality can only be "found liable under Section 1983 where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)). Thus, "respondeat superior or vicarious liability will not attach under Section 1983" to a municipality. *Id.* at 385 (citing *Monell*, 436 U.S. at 694–95). Instead, a plaintiff must allege facts showing that the constitutional violation resulted from: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003). Here, Plaintiff fails to identify a policy or custom that was the moving force behind his alleged constitutional injuries.

*First*, he does not identify any District policy that violates the Constitution. Although he invokes the notion of an "unconstitutional policy or custom," he does not proceed to describe one. *See* Am. Compl. ¶¶ 105, 165.

---

opportunity to file a second amended complaint.

*Second*, he does not plausibly allege that any final policymaker of the District took actions causing his injury. *See Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75–76 (D.D.C. 2011) (noting that this analysis hinges on whether "the D.C. Code specifically grants authority to [the alleged policymaker] to promulgate administrative rules or . . . policies and procedures" and whether their "discretionary decisions are constrained by policies not of that official's making"). Plaintiff relies on D.C. Mun. Reg. tit. 6-B § 1616.3 to argue that that Health Director is a final policymaker because only she could execute a summary removal, but that provision delegates summary removal authority to all agency heads, and agency heads are not final policymakers if their authorities are constrained by the Mayor or Council's final authority. *See Triplett v. District of Columbia*, 108 F.3d 1450, 1453–54 (D.C. Cir. 1997) (Director of Department of Corrections not a final policymaker); *Singletary v. District of Columbia*, 766 F.3d 66, 73–74 (D.C. Cir. 2014) (Board of Parole not a final policymaker despite "possess[ing] authority to render final revocation decisions in individual cases" because final policymaking authority rested with Mayor and Council); *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91–92 (D.D.C. 2011) (Fire and Emergency Services Chief not final policymaker). The D.C. Code provision establishing DOH expressly reserves for the mayor the authority to "issue rules to implement the provisions of this chapter," making all of the Department's powers subject to the mayor's ultimate decision-making. D.C. Code § 7-737.

*Third*, Plaintiff does not plausibly claim that any alleged unconstitutional conduct here is so persistent that it can be considered a custom of the District. "To clear this high hurdle," Plaintiff must allege practices "so persistent and widespread as to practically have the force of law." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see also Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 40

(D.D.C. 2012) (granting the District's Rule 12(b)(6) motion because four other alleged incidents did not amount to a "persistent, pervasive practice of the city officials"). Plaintiff's failure to identify a single other comparable instance where another employee was subjected to a similar "scheme" is patently insufficient. *See Banks v. Bowser*, No. 18-CV-2146 (TNM), 2019 WL 2161565, at *5 (D.D.C. May 17, 2019) ("naked allusions to a municipal policy are insufficient" to withstand motion to dismiss). Accordingly, Plaintiff cannot establish municipal liability through a custom theory.

*Finally*, Plaintiff fails to plausibly allege the District's deliberate indifference. The deliberate indifference standard for establishing a municipal policy is "an objective standard, 'determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act.'" *Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) (quoting *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011)). It is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)), and "means that, [when] faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction," *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Actual or constructive notice may be shown by demonstrating "[a] pattern of similar constitutional violations." *Connick*, 563 U.S. at 62.

Here, Plaintiff fails to identify any purported deficiency in the District's training, or allege that the District was aware, in spite of this training, that employees' constitutional rights were being violated by supervisors at DOH or more broadly. *See Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226 (D.D.C. 2018) (holding that plaintiff had not pleaded sufficient factual

content to plausibly show that the District was deliberately indifferent to an inadequacy in its training where plaintiff "did not specify a single incident that supposedly alerted the District to a problem"). Plaintiff has not plausibly alleged that the District maintained a policy of deliberate indifference to the risk of constitutional violations. *See Roe v. Wilson*, 365 F. Supp. 3d 71, 83 (D.D.C. 2019) (one prior instance of unconstitutional misconduct could not alone "support a reasonable inference that [that type of] misconduct . . . was so widespread as to put the District on notice of the need to initiate training or take other measures to reduce the risk of future incidents"). He therefore fails to state a claim for municipal liability.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "[A]nd '[s]imply citing to [Plaintiff's] own experiences' does not demonstrate that a plaintiff was 'the victim of a policy or custom that caused them to suffer injury.'" *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 28 (D.D.C. 2014) (quoting *Jones v. District of Columbia*, 879 F. Supp. 2d 69, 87 (D.D.C. 2012)). "[I]n nearly all situations plaintiffs must demonstrate a pattern of injuries in order to establish municipal culpability" because there can be "no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate." *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 151 (D.D.C. 2012) (quoting *Bryan Cnty. v. Brown*, 520 U.S. at 408). Plaintiff's failure to point to any unconstitutional acts other than those allegedly committed against him dooms his § 1983 claims, and they should thus be dismissed.

2.    **Plaintiff's Constitutional Claims under § 1983 Lack Merit.**

a.  **First Amendment**

The First Amendment protects the rights of public employees to free speech in certain

circumstances.  *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 235–42 (2014) (holding that a public

employee who had given sworn testimony at a former coworker's trial was protected by the First

Amendment, through § 1983, from retaliatory action by his employer).  To determine "whether

the speech of a public employee is protected under the First Amendment," *Mpoy v. Rhee*, 758

F.3d 285, 289 (D.C. Cir. 2014), courts assess "whether the employee spoke as a citizen on a

matter of public concern.  If the answer is no, the employee has no First Amendment cause of

action based on his or her employer's reaction to the speech," *id.* at 290 (quoting *Garcetti v.

Ceballos*, 547 U.S. 410, 418 (2006)).  Only "[i]f the answer is yes" does the court consider

"whether the relevant government entity had an adequate justification for treating the employee

differently from any other member of the general public."  *Id.*

Plaintiff claims that the District violated the First Amendment "by terminating the

Plaintiff's employment for private speech, in the form of an e-mail, where the Plaintiff spoke on

a matter of public concern and was engaged in religious expression."  Am. Compl. ¶ 92.  But he

is mistaken.  The communications at issue are an email in which Plaintiff complained that a male

colleague had "portrayed [a female colleague] as nonsensical when she made perfect sense," *id.*

¶ 13, and another that he calls a "very personal . . . private e-mail" to Grant, *id.* ¶ 62; *see* Def.'s

Ex. 3, Grant Email.  It is settled law in this Circuit that "a public employee speaks without First

Amendment protection when he reports conduct that interferes with his job responsibilities, even

if the report is made outside his chain of command."  *Winder v. Erste*, 566 F.3d 209, 215 (D.C.

Cir. 2009).  Here, "the content and context" of Plaintiff's complaint "indicate that [Plaintiff] was

speaking as an employee reporting conduct that interfered with his job responsibilities, rather

14

than as a citizen," *Mpoy*, 758 F.3d at 291, and his "very private" email similarly concerned a

workplace relationship.

Plaintiff's speech likewise did not address a "matter of public concern" but rather dealt

with personal workplace disputes. "Speech involves matters of public concern 'when it can be

fairly considered as relating to any matter of political, social, or other concern to the community,

or when it is a subject of legitimate news interest; that is, a subject of general interest and of

value and concern to the public.'" *Lane*, 573 U.S. at 241 (internal quotation marks omitted)

(quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). "Whether an employee's speech

addresses a matter of public concern must be determined by the content, form, and context of a

given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48

(1983).

Plaintiff's initial complaint about Eaton and his "purely private speech with someone

whom the Defendant knew the Plaintiff had countless private conversations with" did not

address matters of public concern. Am. Compl. ¶ 102. Because Plaintiff's claim relies on

private speech concerning only workplace tiffs and private matters—indeed, speech that so

alarmed Grant that she took steps to protect herself from Plaintiff, *id.* ¶¶ 55, 61; Def.'s Ex. 3,

Grant Email—it is outside the First Amendment's protection and Plaintiff's claim fails.

Even if Plaintiff had spoken as a citizen on a matter of public concern, DOH's interest as

an employer in maintaining harmony among its workers outweighs Plaintiff's interests.

Government employers have a "strong state interest" in avoiding "interference with work,

personnel relationships, or the speaker's job performance [which can] detract from the public

employer's function" that may outweigh a public employee's desire to express himself. *Rankin*

*v. McPherson*, 483 U.S. 378, 388 (1987). The Supreme Court has set forth several factors to

consider in conducting this balancing test, such as "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *LeFande v. District of Columbia*, 841 F.3d 485, 494 (D.C. Cir. 2016) (citing *Rankin*, 483 U.S. at 388); *see also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 830 F.2d 294, 301 (D.C. Cir. 1987) (recognizing "two possible justifications for punishing a public employee's speech: because 'it interfered with the efficient functioning of the [government] office' or because it 'had discredited the office by [being heard] . . . in public'" (quoting *Connick*, 483 U.S. at 389)).

Here, Plaintiff's speech caused his colleague to petition for a protective order from the Maryland District Court of Prince George's County and thus self-evidently impaired harmony among co-workers. *See Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 43 (D.D.C. 2009) (dismissing First Amendment retaliation claim after applying *Pickering* balancing test where employee's speech "had the capacity to exacerbate [a] prior conflict . . . and to threaten his supervisors' authority"), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010).  The District was not required to wait for "events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."  *Connick*, 461 U.S. at 152.  "Instead, they were free to act in response to" Plaintiff's speech.  *Pearson*, 644 F. Supp. 2d at 44.

### b.  Fourth Amendment

Plaintiff claims that the District violated the Fourth Amendment by "publicizing his private speech in a false light" and "seizing his property interest in employment."  Am Compl. ¶¶ 108, 113.  He appears to argue that the District violated his expectation of privacy in his

private emails when Ms. Grant, concerned for her safety, presented an email he had sent her to law enforcement, which factored into the Maryland proceeding and his termination. *Id.* His novel theories are misplaced.

False light invasion of privacy is a tort, not a constitutional transgression; but, more to the point, Plaintiff's voluntary transmittal of his email to a third-party eviscerates any plausible argument that he had a reasonable expectation of privacy in the contents of the email or that a state actor seized his property. The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, (1984). And "the Fourth Amendment does not prohibit all unwelcome intrusions 'on private property'—only 'unreasonable' ones." *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (citation omitted).

Here, Plaintiff's pleading demonstrates that he cannot state a claim under the Fourth Amendment. Plaintiff alleges that he emailed Grant from his personal email address and then Grant forwarded the email Plaintiff had sent her to DOH officials, who later forwarded it to the Metropolitan Police Department. *See* Am. Compl. ¶¶ 55, 61. Accordingly, the District did not "seize" anything from Plaintiff, but instead received an email that Grant had voluntarily provided to it. Finally, the notion that the District "seiz[ed] his property interest in employment," vainly attempts to shoehorn a Fifth Amendment procedural due process theory into the Fourth Amendment's purview and, accordingly, such a claim cannot stand.

c.  **Fifth Amendment**

Plaintiff appears to allege both substantive and procedural due process claims in connection with his termination.  Both fail.  In determining whether a plaintiff states a substantive due process claim, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26 (1985)).  It is therefore important "to focus on the allegations in the complaint to determine how [a plaintiff] describes the constitutional right at stake and what the city allegedly did to deprive [him] . . . of that right."  *Id.*  Generally, to constitute a substantive due process violation, the defendant official's behavior must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Collins*, 503 U.S. at 128 (only most egregious official conduct can be "arbitrary in a constitutional sense"); *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (requirement that state action be sufficiently egregious to shock conscience "exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law").

Plaintiff purports to invoke his right to a "humane, dignified" work environment, Am. Compl. ¶ 123, but this does not constitute a constitutionally protected right, and, in any event, over 66 pages, he alleges nothing that shocks the contemporary conscience.  Nor does Plaintiff plausibly allege that the District owed him a heightened duty due to his employment with the District.  Such a heightened obligation may exist where the State "'takes a person into its custody and holds him there against his will,' hence depriving him of liberty."  *Butera*, 235 F.3d at 648

(quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)).

Employment with the District, however, does not constitute deprivation of liberty such that it

owed Plaintiff a heightened duty to protect his wellbeing.

As to his purported procedural due process claims based on his alleged property and

liberty interests, the bulk of Plaintiff's procedural due process arguments concern the District's

purported deviations from District law, which flouts the well-established principle that a "mere

violation of law does not give rise to a due process claim." *AFGE, AFL–CIO, Local 446 v.

Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007). And "the CMPA satisfies constitutional due

process requirements." *Owens v. District of Columbia*, 923 F. Supp. 2d 241, 250 (D.D.C. 2013),

*aff'd*, 606 F. App'x 585 (D.C. Cir. 2015); *see also Badgett v. District of Columbia*, 925 F. Supp.

2d 23, 30 (D.D.C. 2013) ("Under District law, Plaintiffs had at their disposal a number of

procedural safeguards to protect against the deprivation of their protected property interest

without due process."). Accordingly, the District's purported failure to comply with his

collective bargaining agreement regarding his "hazardous or unsafe working conditions," Am.

Compl. ¶¶ 124–28, and purported failure to comply with the CMPA in effecting Plaintiff's

termination, *id.* ¶¶ 117–23, cannot support a plausible Fifth Amendment claim.

### B. <u>Plaintiff Fails to State a Whistleblower Claim (Count IV).</u>

Plaintiff claims that the District violated the DCWPA by terminating his employment

based on the email he sent to Grant. Am. Compl. ¶ 167–74. This claim fails. First, the DCWPA

requires that a civil action be filed "within 3 years after a violation occurs or within one year

after the employee first becomes aware of the violation, whichever occurs first." D.C. Code

§ 1-615.54(a)(2). Plaintiff cites his termination as the action violating the DCWPA, but that

action was effective June 6, 2022, *see* Def.'s Ex. 4, Summary Removal 3, which was more than

one year before he initiated this lawsuit, *see* Compl. (dated July 14, 2023) [1].

Moreover, the email was not a protected disclosure under the DCWPA. A "protected disclosure" includes the "disclosure of information . . . to a supervisor or a public body that the employee reasonably believes evidences":

> (A) Gross mismanagement;
>
> (B) Gross misuse or waste of public resources or funds;
>
> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
>
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6). Plaintiff's Summary Removal Notice indicates that Plaintiff shared his email with other unspecified employees, Def.'s Ex. 4, Summary Removal 2, muddying the question of whether the email may have been directed at a "supervisor or a public body." Even so, the email was not protected because Plaintiff did not "reasonably believe[]" that his communication evidenced any of the circumstances that could render it a protected disclosure.

> It is not enough for a plaintiff to harbor a "subjective belief that the information set forth evidenced official misconduct." Rather, the plaintiff must demonstrate the "objective reasonableness" of her belief "at the time the disclosure was made." "An employee's reasonable belief turns on whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the government evidence illegality, gross abuse, etc."

*Johnson v. District of Columbia*, No. 20-CV-2944 (RC), 2024 WL 1328437, at *6 (D.D.C. Mar. 28, 2024) (internal quotation marks omitted) (first quoting *Stewart v. District of Columbia*, 290 A.3d 937, 943 (D.C. 2023); and then quoting *Harris v. D.C. Water & Sewer Auth.*, 172 F. Supp. 3d 253, 261 (D.D.C. 2016)). The email, which is the sole communication Plaintiff holds

20

out as a protected disclosure, is an 18-page jeremiad about Plaintiff's perceived slights and indignations, centered on the workplace but only obliquely mentioning work matters. *See* Def.'s Ex. 3, Grant Email. No "disinterested observer" could "reasonably conclude" that the email evidences any gross governmental malfeasance, danger to safety, or related circumstance. Plaintiff's DCWPA claim thus lacks merit and should be dismissed.

> **C.    Plaintiff's Employment Claims are Procedurally Barred and Meritless (Counts V through XV).**

Counts IV through X plead employment claims, all of which are procedurally barred. The CMPA requires Plaintiff to have exhausted his administrative remedies with the Office of Employee Appeals (OEA) before filing this lawsuit. *See Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000) ("With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."). "[A]lthough [the District of Columbia Court of Appeals] ha[s] not held that the CMPA generally preempts common law tort claims[,] [it has] held in several instances that it precluded many of them." *Armstead v. District of Columbia*, 810 A.2d 398, 400 (D.C. 2002).[3] "[I]f a 'substantial question' exists as to whether the CMPA applies, the Act's procedures must be followed, and the claim must initially be submitted to the appropriate District agency." *Id.* (quoting *Grillo v. District of Columbia*, 731 A.2d 384, 386 (D.C.1999)).

---

[3]      *See Hawkins v. Hall*, 537 A.2d 571 (D.C. 1988) (affirming dismissal of employee's conversion claim for failure to exhaust administrative remedies under the CMPA); *District of Columbia v. Thompson*, 593 A.2d 621 (D.C.1991) (finding employee's claims for defamation and intentional infliction of emotional distress were precluded because the CMPA provided an administrative and judicial system to review such claims); *Baker v. District of Columbia*, 785 A.2d 696 (D.C.2001) (holding that CMPA provided exclusive remedy for litigation of employee's mental distress and defamation claims); *Stockard v. Moss*, 706 A.2d 561 (D.C.1997) (plaintiff's slander claim subject to procedures set forth in CMPA).

Here, Plaintiff alleges violations of the CMPA and brings constructive discharge and hostile work environment claims apparently based on violations of the CMPA.  But Plaintiff does not allege that he exhausted such claims with the OEA, *see* Am. Compl., and even if he had, appeals of OEA decisions must be made to the Superior Court of the District of Columbia, not this Court, *see* D.C. Code § 1-606.03.  Furthermore, Plaintiff's common law tort claims related to his employment with the District—intentional infliction of emotional distress (Count XI), libelous defamation (Count XII), invasion of privacy false light (Count XIII), negligence (Count XIV), and wrongful termination (Count XV)—are all barred because he did not exhaust his remedies under the CMPA for such claims.

Plaintiff's DCHRA claims also fail.  Plaintiff appears to allege that his placement on AWOL status on July 28, 2021, violated the DCHRA, but the statute required Plaintiff to bring his lawsuit "within one year of the unlawful discriminatory act."  D.C. Code. § 2-1403.16.  Claims based on his termination, which was effective as of June 6, 2022, are similarly time-barred.  *Compare* Def.'s Ex. 4, Summary Removal 3 ("The effective date of your summary removal remains June 6, 2022."), *with* Compl. (dated July 14, 2023).

Moreover, Plaintiff's DCHRA claims also fail on the merits.  "To succeed on a claim of discrimination under the DCHRA, the plaintiff must establish that they were discriminated against *because* of their membership in a protected class."  *Morris v. District of Columbia*, 313 A.3d 545, 550 (D.C. 2024) (emphasis added) (citing *McFarland v. Geo. Wash. Univ.*, 935 A.2d 337, 346-47, 352 (D.C. 2007)).  "In other words, [Plaintiff's] complaint must plead facts that, when taken as true, 'provide a reason to believe' or 'support a plausible inference' that []he was terminated because of [his sex, sexual orientation, or religion]."  *Id.* at 550–51 (quoting *Poola v. Howard Univ.*, 147 A.3d 267, 280 (D.C. 2016)).  The Amended Complaint pleads no such facts.

Plaintiff insists that he was discriminated against based on his male gender because DOH took steps to protect Grant when she claimed she was fearful of Plaintiff but did not protect Plaintiff when he perceived his own work environment as hostile.  Am. Compl. ¶ 176.  He offers only conjecture to link his gender to these allegedly disparate outcomes, based on different underlying circumstances, making no factual allegation in his overlong pleading to demonstrate any hint of a discriminatory nexus.  *Id.* ¶¶ 175–80.  Plaintiff also declares that "it is obvious, that if not for his sexual orientation, the Defendant would have addressed his pleas not to be stigmatized and suffer the stereotype of the angry Black male menace" because his immediate supervisor's "ardent concern for the anxiety suffered of gay Black males for being gay drives his research."  Am. Compl. ¶ 185.  He offers no other facts demonstrating, or allowing for, any such inference.  Plaintiff similarly speculates that his invocation of religious phrases in correspondence led the District to discriminate against him but offers absolutely no factual allegation suggesting that any District employee took any action because of Plaintiff's religion or religious assertions.  Plaintiff's conclusory DCHRA claims, which declare the "obvious[ness]," *id.*, of the District's discrimination with no factual support, are plainly inadequate.  *See Iqbal*, 556 U.S. at 678.

**D.    Plaintiff's Tort Claims Fail for Lack of Compliance with D.C. Code § 12-309 (Counts XI through XV).**

Finally, contrary to Plaintiff's assertions, *see* Am. Compl. ¶¶ 5–9, Plaintiff failed to meet the requirements of D.C. Code § 12-309, and his tort claims for unliquidated damages may not proceed.  Although Plaintiff's exhibits show that his then-attorney attempted to email the District a notice to satisfy the provision's requirements, *see* Pl.'s Am. Compl. Ex. 1 [17-1], Ex. 2 [17-2], the District only accepts § 12-309 notice by particular means and with adequate detail to put the District on notice of the potential liability.  The District's Office of Risk Management replied to

Plaintiff's then-attorney's office with information on how properly to file a tort claim, *see* Def's Reply Ex. 2, Email from Lana Craven to David Jastrab (Dec. 1, 2023); and, as the declaration attached to the District's motion to dismiss the original complaint demonstrates, Plaintiff never did file a proper claim, *see* Def.'s Mot. to Dismiss Ex. 1, Decl. of Lana Craven; *see also Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004) ("The notice statute is construed narrowly against claimants '[b]ecause it is in derogation of the common law principle of sovereign immunity . . . .'" (quoting *Gross v. District of Columbia*, 734 A.2d 1077, 1081 (D.C. 1999))). And, even if notice by email was appropriate, the ostensible notice is deficient, because it only enumerates some potential claims but does not provide the time or manner of events leading to potential liability and offers only cursory detail. *See Cason v. D.C. Dep't of Corr.*, 477 F. Supp. 2d. 141, 145–46 (D.D.C. 2007) (dismissing a tort claim on the grounds that "notice was defective . . . because it failed to state the place, cause and circumstances of [the plaintiff's] injury"). Therefore, the Court should dismiss Counts XI through XV of the Complaint with prejudice, as any further amendment would be futile.

## CONCLUSION

For these reasons, the Court should grant the District's motion and dismiss the Amended Complaint with prejudice.

Date: August 9, 2024                    Respectfully submitted,

                                        BRIAN L. SCHWALB
                                        Attorney General for the District of Columbia

                                        STEPHANIE E. LITOS
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        /s/ *Steven N. Rubenstein*
                                        STEVEN N. RUBENSTEIN [1013094]
                                        Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
LIRAN KOROPITZER [90005151]
400 6th Street, NW
Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov

*Counsel for Defendant District of Columbia*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, I caused a copy of the District's Motion to

Dismiss the Amended Complaint and supporting memorandum of points and authorities to be

served on Plaintiff *pro se* via mail at the following address:

Baron Jamal Bell
12212 Asbury Drive
Fort Washington, MD 20744

                                      */s/ David B. Jastrab*
                                      DAVID B. JASTRAB
                                      Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| BARON JAMAL BELL, <br><br>     *Plaintiff*, <br><br>   v. <br><br> DISTRICT OF COLUMBIA, <br><br>     *Defendant*. |

23-cv-02036 (RC)

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss the Amended

Complaint, the memorandum of points and authorities in support thereof, any opposition, and the

entire record, it is this _____ day of _____ 2024, hereby

  **ORDERED** that Defendant District of Columbia's Motion is **GRANTED**; and it is

further

  **ORDERED** that the Amended Complaint is **DISMISSED**.

  **SO ORDERED**.

        _____
        RUDOLPH CONTRERAS
        United States District Judge

Copies to:
Baron Jamal Bell        David B. Jastrab
*Plaintiff* pro se         Liran Koropitzer
             Assistant Attorneys General
             *Counsel for Defendant District of*
             *Columbia*