## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| BARON JAMAL BELL | ) | |
| | ) | |
| *Plaintiff,* | ) | 1:23-cv-02036 |
| v. | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| *Defendants*, | ) | |

## <u>PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT</u>

Plaintiff, Baron J. Bell, pro se, hereby answers Defendant's, District of Columbia, Motion to Dismiss Amended Complaint (MTD. Am. Compl.) pursuant to Fed. R. Civ. P. 41(b) and 12(b)(6). Plaintiff humbly requests the Court to deny the Defendant's motion and rule the Amended Complaint does satisfy Fed. R. Civ. P. 8(a) and that it states claims under Fed. R. Civ. P. 12(b)(6) for the following reasons. A proposed order is also attached.

## INTRODUCTION

Plaintiff, Baron J. Bell filed suit against the District of Columbia on July 14, 2023. That complaint had counts on: 42 U.S.C. § 1983 First Amendment, Fourth Amendment, Fifth Amendment of the United States Constitution; District of Columbia Whistleblower Laws, D.C. Code Ann. § 1-615.51 *et;* District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401 *et seq;* District of Columbia Comprehensive Merit Personnel Act, D.C. Code § 1-603.01, *et seq;* Constructive Discharge; Hostile Work Environment; Intentional Infliction of Emotional Distress; Libelous Defamation; Invasion of Privacy False Light, and Negligence. The complaint, submitted to the Court unedited, by Plaintiff's then Counsel, was 136 pages consisting of 458 paragraphs.

1

RECEIVED

AUG 28 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

The Defendant filed for a Motion to Dismiss on the grounds the Complaint violated Fed. R. Civ. P. 8(a), which provides a complaint must give defendant fair notice of the claims and the grounds upon which each rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On June 5, 2024, this honorable Court granted the Defendant's Motion to dismiss giving Plaintiff leave to file an Amended Complaint on or by July 5, 2024. The Plaintiff filed an Amended Complaint on July 5, 2024, having 66 pages and 251 paragraphs which include 11 paragraphs dedicated to 1); Jurisdiction and Venue 2); the District of Columbia's Section 12-309 Pre-Suite Notice, and 3); description of the Parties. The Amended Complaint has an additional count, Wrongful Discharge, for the Defendant's wanton and willful violation of the First Amendment, Fourth Amendment, Fifth Amendment, DC Comprehensive Merit Personnel Act (CMPA), and for the Defendant's willful violation of District Policy Issuance No. 2019-08 Maintaining a Healthy Workplace: Anti-Bullying Policy.

The Defendant now motions the Court to dismiss the Amended Complaint. Again, the Defendant objects to a complaint that is overly lengthy and meandering, essential facts undiscernible, although once again somehow, by the Complaint, the Defendant can argue in the alternative it is apparent the Plaintiff's claims fail under Fed. R. Civ. P. 12(b)(6). As with the original Complaint, the Defendant's alternative answer reveals the Amended Complaint has provided more than fair notice of the Plaintiff's claims. In fact, the MTD. Am. Compl. shows the Defendant knows the essential facts forming the grounds upon which rest the Plaintiff's claims in minute detail. Nonetheless, the Defendant feigns the Complaint violates Federal Rule 8(a) for not providing fair notice of the claims and grounds upon which they rest. The Plaintiff now responds to Defendant's second Motion to Dismiss causing further undue delay in the proceedings.

2

## STANDARD OF REVIEW

### Fed. R. Civ. P. 8

Federal Rule of Civil Procedure 8(a) requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The requirements of Rule 8 are meant "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hat is a proper length and level of clarity for a pleading . . . is largely a matter that is left for the discretion of the trial court" and varies from case to case depending on "the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2004)). After all, Rule 8 does not require a ''short and plain *complaint,*'' but rather a ''short and plain statement of the *claim*.'' FED. R. CIV. P. 8(a)(2) (emphasis added) *Ciralsky v. C.I.A*, 355 F.3d 661 (D.C. Cir. 2004). Indeed, Rule 8(e)(2) provides that: ''A party may set forth two or more statements of a claim or defense alternatively a party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.'' *Id.* Moreover, it is ''each averment of a pleading'' that Rule 8(e)(1) states ''shall be simple, concise, and direct'' — not each pleading itself. *Id.*

### Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds*

by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Brewer v. District of Columbia* , 891 F. Supp. 2d 126, 130 (D.D.C. 2012). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Still, the complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In deciding a motion to dismiss, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## PLAINTIFF'S ANSWER IN REBUTTAL TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

### I.    Plaintiff's Complaint Satisfies Fed. R. Civ. P. 8.

The Plaintiff's Amended Complaint satisfies Fed. R. Civ. P.8(a). The Amended Complaint has served the Defendant fair notice of the claims and of the grounds upon which each rest as evident by the Defendant's detailed responsive answer.  In support of MTD. Am. Compl. *Ciralsky* is cited as an authority. *Ciralsky v. C.I.A*, 355 F.3d 661, 671 (D.C. Cir. 2004). The Defendant's reliance on *Ciralsky* is too short sighted and actually fatal to its argument. In the Court's opinion on *Ciralsky*, Judges Ginsburg, Garland, and Williams were very instructive about the purpose of Rule 8(a). Although the trial court found that *Ciralsky's* amended complaint "still fatally suffers from an excess of unnecessary evidentiary detail", the appellate court opined that Rule 8 does not require a short

and plain complaint rather a short and plain statement of the claim. *Ciralsky v. CIA,* Mem. Op. at 1 (D.D.C. Dec. 28, 2001). In the instant case, the Plaintiff's Amended Complaint includes a section "Statement of the Claim", which the Defendant does recognize in its MTD. Am. Compl., at 2. The appellate court in *Ciralsky* confirmed: "Indeed, all that a Title VII complaint has to say to survive dismissal under Rule 12(b)(6) is: "The plaintiff was terminated from his job because of his religion."" *Ciralsky v. C.I.A*, 355 F.3d 661, 671 (D.C. Cir. 2004). If the appellate court found federal claims may be established on 11 words, then the Plaintiff's section "Statement of the Claim" of his Amended Complaint must be deemed as having provided more than fair notice of the grounds upon which rests the Plaintiff's claims on 15 counts. The "Statement of the Claim" are short and plain.

   And Judges Ginsburg, Garland, and Williams acknowledged in *Ciralsky* the understandable relationship between length of a complaint and the number of its claims. In *Ciralsky* the Plaintiff averred 20 claims. The Amended Complaint in the instant case avers 15. And the Plaintiff's First Amendment and Fifth Amendment counts bring claims on several clauses, thus adding to the length of the Amended Complaint due to those counts. The appellate court in *Cirlasky* in explaining why the complaint was not to be dismissed with prejudice reasoned: "Similarly, the government does not contend that the complaint was frivolous on its face." *See Salahuddin,* 861 F.2d at 43. *Ciralsky v. C.I.A*, 355 F.3d 661, 670-71 (D.C. Cir. 2004). As is the case here, the Defendant has not and cannot make a credible claim that the Amended Complaint is frivolous on its face.  Indeed, this honorable Court found that the original Complaint was not unintelligible. *See* Memorandum of Opinion, at 12. However, the court disapproved of its length. Therefore, the Court directed the Plaintiff to take steps to pare down the Complaint and instructed the Plaintiff he might do so without rendering the complaint merely a high-level summary. *See* Memorandum of Opinion, 12.

The Plaintiff has complied with the Court's directives, paring the pleading more than half.

An analysis of the Amended Complaint shows it is not the same as the original complaint i.e. only reformatted, spaces deleted, and paragraphs merged. *Ciralsky v. C.I.A*, 355 F.3d 661, 670-71 (D.C. Cir. 2004). A read of the Amended Complaint's section dedicated to counts will show the Plaintiff has followed the Court's instructions. The Plaintiff's presentation of counts has paragraphs citing legal precedent, then employs paragraphs with references to the factual allegations so that it is clear how the Plaintiff asserts the facts of the case satisfy the legal elements for his claims. The Plaintiff has not mixed law with facts. Of the Amended Complaint's 15 counts, six (6) are only one (1) page in length and six (6) are no more than two (2) pages in length. Therefore, only three (3) of 15 Counts are more than two (2) pages. The Plaintiff found it pragmatic to reference facts in support of law within the presentation of counts. Although he anticipated legal lulling once again from the Defendant, motioning the Court to dismiss the Amended Complaint because of its length, if the pleading had no reference to law, the Plaintiff knew the Defendant would attack the pleading for lacking legal arguments. And the Defendant predictably has done so. Example, the Defendant argues the Amended Complaint failed to establish municipal liability. That is a legal argument.

The Plaintiff disagrees that the Amended Complaint is "excessively long, rambling, disjointed, incoherent, [and] full of irrelevant and confusing material". *See* MTD. Am. Compl. at 9. Particularly in light of the ruling in Brown. There, the court said citing Moore: "The burden imposed by the rule (8a) is by no means exacting. Quite to the contrary, the provision generously accords the plaintiff wide latitude in framing his claims for relief." *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977). And the court in *T.M. v. D.C.*, 961 F. Supp. 2d 169 (D.D.C. 2013), relying heavily upon *Brown* opined; "Although the complaint undoubtedly contains more detail than

necessary to meet the bare bones requirement of Rule 8, it is important to keep in mind that the

"short and plain statement" is a "*minimum* standard" for pleadings. *Brown,* 75 F.R.D. at 498

(emphasis added). After all, the rule does not *mandate* dismissal of any complaint that goes ever so

slightly beyond "short and plain." In fact, where the complaint provides additional relevant detail in

a logical and coherent fashion, it serves to advance the rule's purpose of "giv[ing] fair notice of the

claim being asserted." *T.M. v. D.C.*, 961 F. Supp. 2d 169 (D.D.C. 2013), quoting *Brown,* 75 F.R.D.

at 498.

The court in *T.M. v. D.C.* also quoting from Brown is very instructive in determining the

quality of the Amended Complaint here: "**** the complaint in *Brown* was "a confused and

rambling narrative of charges and conclusions concerning numerous persons, organizations and

agencies," and plaintiff failed to allege "with even modest particularity the dates and places of key

events. 75 F.R.D. at 499." *T.M. v. D.C.*, 961 F. Supp. 2d 169, 175 (D.D.C. 2013).  The Amended

Complaint here is drastically different from the complaint as described in *Brown.* Here, the factual

allegations in the Amended Complaint are acutely alleged with particularity to the dates of key

events. Statement of facts have not been pleaded haphazard nor are the facts meandering. The

Plaintiff's factual allegations enumerate in each paragraph a unique event transpiring over an 18-

month period. Every communication to Management occurring within this time span the Plaintiff

has not included. There is plenty more. However, the Plaintiff followed the directives of the Court

and withheld from including quotes from his every communication pleading the Defendant to act as

Summary Judgement or trial would provide that opportunity, the Honorable Judge instructed in the

Court's Memorandum. However, those events which the Plaintiff found relevant to include in the

Amendment Complaint are presented according to a meticulous timeline which shows a crescendo

of Defendant's reckless indifference and inaction over a period 18 months constituting policy and

custom rising to constitutional levels. The events enumerated within this timeline and quotes show the Plaintiff is entitled to relief on all claims.

And the Plaintiff trusts the Court will find his descriptive language used in recounting the factual allegations is not verbose nor prolix. The language used is for the benefit of the Defendant to have fair notice of the acts the Plaintiff suffered which were damaging to his reputation and deprived him of dignity and reasonable conditions of employment, the basis of the Plaintiff's substantive due process claim. The underlying facts are not obscured but identifiable. The Defendant can admit or deny. The Plaintiff finds no drastic difference with the framing of his Factual Allegations than the court's examples in *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

The Plaintiff humbly appeals to the Court to consider the nature of the action and the availability of information in determining the length of the pleading appropriate. *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2004)). The nature of the Plaintiff's action includes a claim on substantive due process. Such claims invoke the court's additional scrutiny of the description of the fundamental liberty interest asserted. *Sanders v. District of Columbia,* 522 F. Supp. 2d 83 (D.D.C. 2007). The court's scrutiny of a claim of substantive due process involves assessing the nature of the relationship between the Plaintiff and government. If the court finds the government had a special duty to a Plaintiff which was breached, then the court must reach that the nature of the breach could shock the temporary conscience. In determining that a breach might shock the temporary conscience, government's inaction to respond to a need is a factor.

In the instant case, there's an abundance of evidence available to present before the

8

temporary conscience of a Defendant's inaction at levels to reach a *prima facie* Fifth Amendment claim. And this available evidence is in the form of written communications. These written communications should not be viewed necessarily as evidence, however. Quotes from these written communications are truly factual allegations. While making the Amended Complaint lengthier, the Plaintiff thought it pragmatic to include several incidents and quotes of the exact language used while he pleaded to the Defendant over a period of 18-months to act to address his safety needs and workplace conditions. Am. Compl. ¶¶ 30, 36, 49, 60, 67-68. The Plaintiff's language while pleading to the Defendant are facts necessary for considering would the Defendant's inaction shock the temporary conscience to constitutional levels. Of course, the Defendant claims the Plaintiff, *"alleges nothing that shocks the contemporary conscience." See* MTD. Am. Compl., at 18.  In anticipation of this cold but predictable argument, the Plaintiff included in the Amended Complaint quotes of his pleading to the Defendant: *"…not only have I become the victim of harassment in the workplace and my professional character disparaged and maligned, but now my very life may be in jeopardy as well."* Am. Compl. ¶ 30. A fact finder, if decent and humane, would consider shocking a Plaintiff's plea for his very life's safety going unacknowledged. And in light of the Plaintiff's pleas, as only made possible from a reading of his quotes, the Defendant's rationale for attempting to separate the Plaintiff would also be found shocking: *"As a solid performer of his work, it is difficult to understand his level of disregard for following instructions."* Am. Compl. ¶ 46.

In addition to considering his substantive due process claim the Plaintiff also humbly asks the Court to consider the availability of information which enables him to establish the elements on his First Amendment, Fourth Amendment, and Whistleblower Act claims. In the instant case, the sole proffer the Defendant puts forth to justify injuring the Plaintiff is that a communication he authored while off duty threatened the personal safety of a DC government employee. The e-mail is

available. Therefore, the lengthiest quote included in the Plaintiff's Amended Complaint is taken from this available and crucial evidence. Am. Compl. ¶ 85. The Plaintiff's e-mail to DC employees Ms. Grant and Ms. Green could have been included in the Amended Complaint in entirety. Then, the Defendant in its opposition could simply respond by showing which statements from the Plaintiff's e-mail are proven threats to anyone's personal safety. Case dismissed.

Also available as evidence in the instant case is an e-mail exchange from the Director of DC Health and Ms. Grant about the Plaintiff. Including excerpts from this communication within the Amended Complaint enables the finder of fact to judge the state of mind of DC Health's Director who summarily removed the Plaintiff from employment. These excerpts show that as soon as Ms. Grant contacted the Director once again defaming the Plaintiff, Director Nesbitt promised to assist her with no consideration of due process. Am. Compl. ¶ 57. And the included excerpts show Director Nesbitt was aware she was acting against the Plaintiff for off-duty conduct establishing the existence of an element of a First Amendment claim. Am. Compl. ¶ 59. There is also available Ms. Grant's testimony in a legal proceeding against the Plaintiff. Including excerpts from Ms. Grant's testimony in the Amended Complaint shows the Defendant had the Plaintiff's e-mail investigated by law enforcement and the investigation concluded the Plaintiff threatened no one. Am. Compl. ¶ 61. Then, we have the availability of another written communication, it is from the Plaintiff himself to the Director of DC Health. The excerpts included in the Amended Complaint from this document show the Plaintiff made protected disclosures to the Director, including his intent to sue Defendant for violations of law. Am. Compl. ¶ 68. Thus, including quotes from this communication establish an element of the Plaintiff's First Amendment and Whistleblower Act claims. These excerpts from this available information also establish the Plaintiff's DC Human Rights Act claims. The quotes show Director Nesbitt was given evidence that employee Grant gave knowingly false statements

against the Plaintiff to a court. But for some reason, which the Plaintiff argues is discriminatory, the Director still acted against the Plaintiff, a Man, at the behest of employee Grant, a Woman. Finally, a Final Summary Removal Notice is available. Including excerpts in the Amended Complaint from this document enables the Plaintiff to show retaliation for his protected disclosures, as the Final Summary Removal Notice gives no legitimate reason for the Plaintiff's termination. Am. Compl. 81-82. And excerpts from the Final Summary Removal Notice also prove that the Director intended to stigmatize the Plaintiff in the process of terminating him. Am. Compl. ¶ 75.

By including quotes in the Amended Complaint from available communications the Defendant has been given fair notice of the facts which establish the elements of the Plaintiff's 15 actions. The inclusion of quotes does not burden the Defendant. The quotes enable the Defendant to discern very early on in the proceedings that the Plaintiff has evidence that the sole proffer offered for the injury he suffered is a lie. And it is not necessary for the Defendant nor the Court to have to lift and sift through tons of material from the Plaintiff's many, many, pleas for substantive due process, all unanswered over a period of 18 months.

In its latest MTD. Am. Compl., the Defendant provides as an exhibit the e-mail which serves as its sole evidence for its false proffer in justification for the injury it inflicted upon the Plaintiff. In contrast to the Plaintiff's Amended Complaint which brings the critical evidence from this available information to the surface, the Defendant invites the Court, its clerks, and the Honorable Judge to go on a fishing expedition. Yet, the Defendant knows there will be no bite on the line. In fact, a reading of the Plaintiff's private e-mail in entirety only proves the Defendant's deliberate indifference. The Plaintiff did not threaten anyone's personal safety. Because the Plaintiff's pleading presents the catch before the Court fileted, making it unnecessary to go beyond

the pleading to net evidence to assess the strength of his claims, the Defendant motions the Court to dismiss the complaint for being excessively lengthy. While at the same time, the Defendant cites cases involving § 1983 claims ultimately dismissed by the courts for not establishing municipal liability because they failed to recount in detail a sufficient number of incidences where a Plaintiff attempted to make the District aware of a problem. *See* MTD. Am. Compl., at 13.

"Yet, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp., 550 U.S. at 555) (internal quotation marks omitted). "Under the Federal Rules, the purpose of pleading is simply to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," not to state in detail the facts underlying a complaint. *Conley v. Gibson,* 355 U.S. 41, 47 (1957)" *Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996). The legalese employed by the Defendant to mischaracterize the Amended Complaint does not prove the Complaint has failed. All that is required of the Plaintiff at this stage is to provide fair notice of his claims. The Defendant, clearly, is cherry-picking the Plaintiff's pleading to persuade the Court to dismiss it to cause yet another delay. "The presence of extraneous matter, unless in extreme cases, which this is not, does not warrant dismissal."*; Sonnino v. Univ. of Kansas Hosp. Auth.,* C.A. 02–25760KHV, 2003 WL 1562551, at *2 *(D.Kan.* Mar. 24, 2003*).* "Some complaints are windy but understandable. Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case." *U.S. ex Rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

The Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended Complaint and find that it does satisfy Fed. R. Civ. P.8. Fair notice has the Defendant been given, as demonstrated in the Defendant's very detailed response in denial of the facts.

## II.    Plaintiff's Claims are Clearly Sufficient Under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U. S. 2009. The Plaintiff's pleading provides sufficient statements of facts which raise the Plaintiff's right to relief far above the speculative level on his First, Fourth, and Fifth Amendment claims. The Plaintiff's pleading also sufficiently proves he is entitled to relief on all statutory and tort counts under the supplemental jurisdiction of this Court.

### A.    Plaintiff's 42 U.S.C. §1983 Claims are before the Court of Proper Jurisdiction

"Based on the legislative histories of both § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983". *Patsy v. Florida Board of Regents*, 457 U.S. 496, 516 (1982). "However, the local Court of Appeals has, in accordance with Supreme Court precedent, also held that exhaustion of administrative remedies pursuant to the CMPA is not a prerequisite to filing a complaint premised on § 1983 violations." *See Roache v. District of Columbia*, 654 A.2d 1283, 1284 (D.C. 1995). "Comprehensive Merit Personnel Act, "that particular statutory remedy does not foreclose" a plaintiff from bringing claims arising under the laws of the United States, as this court has original jurisdiction over such claims." *Brewer v. Dist. of Columbia*, 891 F. Supp. 2d 126, 133 (D.D.C. 2012). "Notwithstanding the many decisions viewing the CMPA's effect as jurisdictional, the Court agrees that its subject-matter jurisdiction is unaffected by that law. *Greer v. Bd. of Trs. of the Univ. of Columbia*, Civil Action 23-3396 (JEB). "Thus, in the absence of any "sweeping and direct [congressional] language" to the contrary, this Court must conclude that the CMPA's exhaustion requirement is non-jurisdictional as it pertains to the federal courts, *Amobi v Brown*, 08-cv-1501 (KBJ).

The Plaintiff has brought three claims in the U.S. District Court DC Circuit premised on Defendant's deliberate, intentional, and willful violations of § 1983. The Plaintiff has averred the Defendant violated protections under the First Amendment (Am. Compl., ¶92); the Fourth Amendment (Am. Compl. ¶ 108); and the Fifth Amendment (Am. Compl., ¶¶117,135) of the United States Constitution. The Plaintiff's foundational claims, premised on violations of the Constitution, preempt the CMPA.

The court has held: "We have noted several times the sweeping nature of this exemption as encompassing nearly all employee claims arising out of workplace activity. *See, e.g., King v. Kidd*, 640 A.2d 656, 663 (D.C. 1993)" *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000). Further establishing the jurisdiction of this Court to hear the instant case is that the final injury caused by the Defendant to the Plaintiff, cementing his First Amendment claim and establishing his Fourth Amendment claim, did not arise out of any workplace activity. The Defendant's proffer for causing the Plaintiff's final injury, was that a private e-mail he sent while AWOL, to the private e-mail addresses of two DC government employees he'd known for 16 years, threatened the personal safety of one. Upon receiving the e-mail written by the Plaintiff from one of its recipients, DC Health Director LaQuandra Nesbitt wrote: *"I am; however, concerned that you are being contacted by [Plaintiff]via his personal e-mail, outside of his professional role in HAHSTA"*. Am. Compl. ¶ 59.  As the facts clearly reveal the Director was aware the Plaintiff was acting as a private citizen, exercising his right of free speech and thus the subsequent adverse action against him was unrelated to the discharge of his job duties. Therefore, the Plaintiff's lawsuit falls out of the CMPA's remedial scheme.

Even had the disputes in this lawsuit arose from workplace activity, a court of equity may

waive the CMPA's non-jurisdictional requirement where the claimant makes a "strong showing" of "compelling circumstances" to justify such a waiver. *Fisher v. D.C*, 803 A.2d 962 (D.C. 2002).

Here, the Plaintiff has a strong showing of compelling circumstances although his foundational constitutional claims require no showing. The Plaintiff witnesses a Woman colleague bullied and humiliated by a male colleague in an Anti-Racism Group, of all groups for such to take place. He reports this act in accordance with the District of Columbia's Anti-Bullying Policy. Nothing is done. The Plaintiff is then subject to retaliation, portrayed as a threat to cause an act of violence towards co-workers. Compl. ¶¶ 15-29.  When the Plaintiff pleads for protection from this retaliation and that his reputation be safeguarded, he is then charged absent without official leave (AWOL). No mitigating circumstances are considered nor is the Plaintiff afforded an opportunity to challenge the action. Am. Compl. ¶¶ 30-36.  The Plaintiff is then accused of job abandonment. Am. Compl. ¶¶ 45-47.  He answers, repeating his safety concerns, and putting the Defendant on notice of constitutional violations. Am. Compl. ¶¶ 48-51. After six months of hearing nothing, he is directed to return to work, due to the discovery of a procedural error. But the next day, he is directed not to report to work. Am. Compl. ¶¶ 53-54. Another month and a half passed. The Plaintiff then learns he is terminated from employment, falsely accused of threatening the personal safety of a co-worker by an e-mail that he sent to her private e-mail address. And for a third time, the Defendant claims there were no mitigating circumstances, although the Plaintiff has been AWOL 11-months waiting for his workplace safety concerns to be addressed without a word. Am. Compl. ¶¶ 70-84. The Plaintiff was informed he may appeal the adverse action, after the fact. However, without consideration of mitigating circumstances and without being afforded an opportunity to meet the challenge before being totally disposed of his property interest, the record was incomplete. Moreover, the Plaintiff would be left with having to challenge a decision that was

not tempered by his response. The scales were unbalanced. Seeking justice, the Plaintiff requested the Defendant retract its adverse action and afford him due process. Plaintiff's Attorney wrote in part to Defendant: *"Mr. Bell was denied his basic due process rights of notice and an opportunity to respond to the summary removal."* Am. Compl. ¶¶ 87-88. [Exhibit 1]. No answer. And now, the Defendant, after failing to respond to his every plea that the provisions of the CMPA be followed, now claims it is the Plaintiff who has failed to adhere to the CMPA.

Moreover, any relief available to the Plaintiff under the remedial scheme of the CMPA would be inadequate. The court found in *Crockett* that although filing claims with OEA is usually necessary, Crockett was not required to because the D.C. system could not grant the full relief to him in connection with his federal claims. The OEA is not authorized to grant compensatory and punitive damages. *Crockett v. Dist. of Columbia*, 95 A.3d 601 (D.C. 2014).

As in *Crockett,* here the Plaintiff sues for punitive and compensatory damages. The Defendant's outrageous, egregious, dubious, and most shocking actions demand. The Plaintiff, after being on AWOL a year, DC government doing nothing to address his pleas for substantive due process, sends a private e-mail to two of his co-workers announcing his intention to sue. His private e-mail was forwarded to the Director of DC Health. The Plaintiff learns the Director is concerned with his contacting a DC employee he's known over 16 years outside of his professional role at HAHSTA. Am. Compl. 59. Therefore, the Plaintiff reaches out to the Director informing her:

> *"I have known Ms. Grant for 17 years, longer than anyone at HAHSTA has known her, save Monique Green. I have been her biggest supporter and encourager at HAHSTA. And I have also been her biggest apologist with staff. The opening paragraph above is the result of one of countless conversations in 17 years between myself and Ms. Grant, whether in the offices of HAHSTA, by e-mail, or by phone, or at her house. And now, I read where you are concerned I am contacting her by personal e-mail outside of my professional role in HAHSTA?"* Am. Compl. ¶ 62.

The Plaintiff also informs the Director of DC Health:

> *In contrast, it is I who has filled the files with pleas for protection. Not only have my pleas gone unanswered, but I have been AWOL'D. Instead of coming to my aid, DC Health sends me a Proposed Separation with Anthony Fox and John Hall conspiring to besmirch my character even further, claiming I have abandoned my job with no mitigating circumstances…Near a year now, I have been begging and pleading for DC Health to take action to make me safe from the lies, slander, and character assassination from Mr. Eaton and Ms. Grant.* Am. Compl. ¶ 67.

The Director of DC Health responds to the Plaintiff's pleas about the obvious disparate responses to his safety concerns by terminating his employment, charging him with threatening the personal safety of a DC government employee by e-mail. But employee Grant testified in court:

> *"So, when I sent the e-mail to the Director, she forwarded it to our think Attorney General, Phil Cousins [Phillip Husband] of the Department of Health…So the Attorney General forwarded to the district detectives. So the detective called me on—called me and he read it and he went over it and was asking questions. His name is Detective David Carter from the first District of DC. And he informed me, based on the e-mail and its content, that it would be for me, that I needed to do what I had to do to protect me and my family as it relates to, like I said, Mr. Bell had—did not threaten me."* [Exhibit 2, Grant vs. Bell, Court Transcripts, Pg 8]. Am. Compl. ¶ 61.

How cold and callous Director Nesbitt and her counsel Phillip Husband. They accused the Plaintiff of threatening violence when they knew from their own investigation the Plaintiff threatened no one. And certainly, Director Nesbitt and Counsel Husband read in the Plaintiff's private e-mail how emotionally damaging being stereotyped and stigmatized as threatening violence in the workplace was to him. The Plaintiff informs Ms. Grant in his private e-mail:

> *Sherita, when you went to Management, and told them you believed I was going to physically hurt [Eaton] through violence, that put me in definite harm. You put not only my reputation in peril, but my life in jeopardy.* Am. Compl. ¶¶ 55-56.

Adding insult to their economically and reputationally damaging injuries inflicted upon the

Plaintiff, Director Nesbitt and Mr. Husband plotted a narrative as further justification for their

illegal employment action against the Plaintiff. Director Nesbitt and Mr. Husband accused the

Plaintiff of causing workplace disruption because he included DC government employee Monique

Green as a recipient of his private e-mail. Everyone at DC Health knew Ms. Grant, Ms. Green, and

the Plaintiff were personal friends for years. Not only did the Plaintiff inform the Director of this

in his communication to her, but Grant, in an April 2021, communication to management, where

she was falsely portraying the Plaintiff as a safety threat even then, disclosed herself the

relationship between she, the Plaintiff, and Ms. Green. Ms. Grant disclosed:

> *I then told Baron how it made me feel when this first started back in November and*
> *he said to me that I could not see the disrespect from Dr. Eaton toward Janice*
> *because Dr. Eaton is my benefactor! When Mr. Bell made this statement, we were*
> *on the phone with another one of our colleagues, Monique Green.* [Exhibit 3, Grant
> Complaint Against Bell]

The Defendant's wanton and willful violations of the First, Fourth, and Fifth Amendments

are most deserving of punitive and compensatory damages. This lawsuit is in the proper court of

equity which has exclusive jurisdiction over the Plaintiff's § 1983 claims. No equitable

administrative remedy under the CMPA is possible.

### 1.    Plaintiff Has Successfully Pled Municipal Liability under § 1983

The Amended Complaint successfully establishes municipal liability. According to the

precedent established by the Supreme Court in *Monell*: "…a local government may not be sued

under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the government as an

entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services*, 436 U.S.

658, 694 (1978). The Plaintiff in his Amended Complaint cites as an authority, *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997), which establishes that a single action can represent municipal policy where the acting official has policy making over the particular issue. Am. Compl. ¶ 105. The Plaintiff also cites as an authority, *Sanders v. District of Columbia*, 522 F. Supp. 2d 83 (D.D.C. 2007), which establishes in order to hold a municipality liable for civil rights violations of its employees, the municipality must have acted in accordance with a "government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Am. Compl. ¶ 165. In showing municipal liability, the Plaintiff specifically cited D.C. Code § 1-523.01 and D.C. Code § 1-610.51 establishing the authority and responsibilities of DC government department Directors as officials. The Amended Complaint also cites D.C. Mun. Reg. tit. 6-B § 1616.3 to evidence the act of DC Health Director Nesbitt in the instant case undisputably established municipal liability because only she was invested with authority to act over the policy of summary removals to which the Plaintiff was subject.

In its MTD. Am. Compl., the Defendant argues the Plaintiff has not plausibly alleged any final policymaker took actions causing injury. *See* MTD. Am. Compl., at 11. The Defendant cites *Triplett* as an authority, perplexingly proclaiming that the court in *Triplett* found the Director of Department of Corrections was not a final policymaker. But the Defendant is mistaken. In identifying final policymakers for the District of Columbia, *Banks* is very instructive. First, *Banks* explains the court's finding in *Triplett*: "The Circuit Court found that one of the final policymakers was the Director of the D.C. Dept of Corrections because he was responsible for "the general direction and supervision" of the Department." *Banks v. District of Columbia*, 377 F. Supp. 2d 85, 91 (D.D.C. 2005). And the court in *Banks* gave a straightforward methodology for identifying the District's final policymakers. The court found the Director of the Department of Mental Health was

responsible for the administration of the Department of Mental Health. The Plaintiff hopes the Defendant understands, even in disagreement. And as an administrative function of the Director was employee removal, the court found: "Since Ms. Knisley is the Director of the Dept. of Mental Health, she is a final policymaker. Thus, the District is liable under 42 U.S.C. § 1983 for Ms. Knisley's policy decisions." *Banks v. District of Columbia*, 377 F. Supp. 2d 85, 92 (D.D.C. 2005).

Director Nesbitt was an *"agency head". See Coleman v. Dist. of Columbia,* 828 F. Supp. 2d 87, 91 (D.D.C. 2011) (Noting final decision maker typically must be at least an agency head). Director Nesbitt was not a *tortfeasor*. D.C. Code § 7-153 invested Director Nesbitt with the same responsibility of supervision and general direction as the Director in *Banks*. Director Nesbitt had authority to remove personnel. Director Nesbitt was the final policymaker at DC Health.

But the Plaintiff does not bring this suit claiming he was subject to one action. It is clear by the factual allegations in the Amended Complaint, from Department Heads to the Mayor's Office, the Plaintiff pleaded for his workplace to be made safe, humane, and dignified. Am. Compl. ¶¶ 19-21, 23, 27, 30-32, 41, 48-51, 60, 65-68. The Plaintiff argues 18-months of pleading for substantive and procedural due process, 18-months of deliberate indifference to his need to be made safe, physically and mentally, in his workspace which was under the Defendant's sole supervision, is more than enough time to consider a pattern so consistent that they have become custom. The Amended Complaint alleges facts which in toto show violations of law at constitutional levels which the Plaintiff asserts satisfy all the four prongs of municipal liability. Am. Compl. ¶¶ 87-90.

Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6). The Amended Complaint sufficiently pleads municipal liability under § 1983.

2.        <u>Plaintiff's Constitutional Claims under §1983 are Meritorious</u>
          a. First Amendment Claim

The Plaintiff's Amended Complaint pleads sufficient facts to establish a First Amendment claim. It is well-established "that individuals do not 'relinquish the First Amendment rights they would otherwise enjoy as citizens' when they accept employment with the government." *Navab-Safavi v. Glassman*, 637 F.3d 311, 315 (D.C. Cir. 2011) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). It is undisputed that the material facts of the instant case show the Plaintiff was subject to adverse action for his private speech, an e-mail written by him forwarded to the Defendant. It is an established precedent that e-mails forwarded to an official(s), constitute protected speech. *Johnson v. Dist. of Columbia,* Civil Action 20-2944 (RC) (D.D.C. Mar. 28, 2024)*.* When receiving the Plaintiff's e-mail, Director Nesbitt informed employee Grant:

> *"I am; however, concerned that you are being contacted by [Plaintiff]via his personal e-mail, outside of his professional role in HAHSTA".* Am. Compl. ¶ 59.

And in the Final Summary Removal Notice, Director Nesbitt wrote that she considered the hearing officer's recommendation when deciding to punish and deprive the Plaintiff of his employment. The hearing officer in her recommendation was very clear:

> *"Although he used a personal e-mail account to send his June 1, 2022 email to Ms. Grant's personal email account, his email referenced District Government business, in particular his objections to the manner in which certain HAHSTA matters are conducted."* Am. Compl. ¶ 171.

The factual allegations of the Amended Complaint show the Defendant understood the Plaintiff's speech was private. And this private speech addressed a matter of public concern, the fair treatment of Women when in the employee of the people's government but also in society in general. The Plaintiff wrote in this private e-mail:

> *"VIOLENCE in NO WAY accomplishes my goal! And my goal is, that DC Government ensure that **RESPECT BE SHOWN A BLACK WOMAN**!... Sherita, this for me is a Divine mission. DC Government is going to address what [Eaton] did."* [Caps and Font from the original]. Am. Compl. ¶ 85.

The Plaintiff also expressed his intention to sue the Defendant in this communication:

> *"And not only DC Health I will be suing."* Am. Compl. ¶ 85.

As enumerated in his factual allegations, the Plaintiff's private e-mail is not the only form in which he expressed his public concern with the fair treatment of Women. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record" *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). In his plea to DCHR and copied to the Mayor's Office on July 9, 2021, to investigate his Complaint and safeguard his substantive rights, the Plaintiff wrote in part:

> *"How can Women thrive in an environment where even as Managers, they can be characterized as 'nonsensical' in a group dialogue with other Managers and the agency's Senior Deputy Director no less?"* Am. Compl. ¶31.

When the Plaintiff was compelled to Answer a proposed separation, he wrote in part:

> *"The total and deliberate disrespect of Women by Men I find offensive!... Bullying of Women in the workplace should be as equally offensive to Men as well as to the Women who are the victims of such vile behavior."* Am. Compl. ¶51.

And specifically made known to Director Nesbitt was the Plaintiff's concern with the fair treatment of Women working in government and in society in general. The Plaintiff informed the Director:

> *"My ardent desire was to be able to work in an environment free from Women being bullied, humiliated, and ridiculed. I wanted my work environment free from Women's Voices being deliberately misinterpreted in an effort to portray them as being nonsensical when actually making PERFECT SENSE! I was demanding Women at DC Health be shown RESPECT!"* Am. Compl. ¶67.

The Plaintiff also informed Director Nesbitt directly of his plan to sue DC government for

allowing him to be retaliated against and for failing to investigate his complaint pursuant to DC

government's Policy Issuance 2019-8 Maintaining a Healthy Workplace. The Plaintiff informs:

> *"Ms. Grant has only established that even the Director is aware of her and Mr.*
> *Eaton's personal relationship and how it motivated Ms. Grant to maliciously and*
> *falsely accuse me of threatening violence so she could protect Mr. Eaton from my*
> *complaint of his gender bullying. I am sure at least a few jurors may wonder, how*
> *did DC Health determine to take action against Mr. Bell for sending the*
> *communication, yet be totally silent and inactive to its contents?"* Am. Compl. ¶68.

As the factual allegations of the Amended Complaint detail, the Plaintiff was terminated

from employment for his public speech expressed as a citizen. The day immediately following the

sending of his e-mail to Ms. Grant, wherein he announced his intent to sue the DC government, the

Plaintiff was informed he may return to work, without prejudice. Am. Compl. ¶ 53. This proves the

Defendant had no other reason to terminate the Plaintiff. And the Final Summary Removal Notice

executed by Director Nesbitt reads: *"You did not receive any adverse or corrective actions within*

*the last three (3) years".*  Am. Compl. ¶ 81. The Final Summary Removal Notice also reads:

*"There have been no complaints about your work performance".* Am. Compl. ¶82.

The sole proffer contrived for the Plaintiff's termination was the Plaintiff's private e-mail to

employee Grant threatened her personal safety. ""True threats" encompass those statements where

the speaker means to communicate a serious expression of an intent to commit an act of unlawful

violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343 (2003),

quoting *Watts v. United States*, supra, at 708. The Defendant has no proof of a legally defined

threat from the Plaintiff to anyone. Neither does the Defendant in its MTD. Am. Compl. dare claim.

To the contrary, the Plaintiff's private speech was investigated, and no threats were found.

The Defendant, showing complete disregard for the facts, now endeavors to mischaracterize

the Plaintiff's e-mail speech about workplace tiffs and private matters. *See* MTD. Am. Compl., at

23

15. Such a characterization only dooms further the Defendant's legal contentions. Certainly, those portions of the Plaintiff's e-mail to Grant and Green which can be deemed "private matters" were beyond the authority of the Defendant to subject the Plaintiff to adverse action. And those portions of the Plaintiff's e-mail to Grant and Green which can be deemed "workplace tiffs" further expose the Defendant's liability. District of Columbia municipal regulations at 6-B DCMR § 1602.2 mandate that for all corrective and adverse actions, managers shall be prepared to demonstrate that mitigating circumstances were considered, which include unusual job tensions, harassment, or bad faith, malice or provocation on the part of others involved in the matter. In plotting the Plaintiff's termination, DC Health's Director and Counsel undoubtedly realized the Plaintiff could not be terminated based on the e-mail's contents. To do so would require their having to factor the malice and provocation referenced in the e-mail on the part of employees Grant and Eaton and the Defendant's indifference and inaction to the Plaintiff's pleas. This would have dictated restoring the Plaintiff to his position, not the most severe action of the kind they desired, which was summary removal.  To accuse the Plaintiff of threatening violence was the proffer Director Nesbitt and Counsel Husband needed, even knowingly false. Counsel for the Defendant, now claiming at this stage, that the decision to terminate the Plaintiff was because his e-mail detailed mitigating circumstances, is one mean magical feat. For if the Defendant's exhibits are fished, counsel and the Court would find three (3) removal notices but not one reference to mitigating circumstances. Am. Compl. ¶68. And it would take no less of a magical trick for counsel to disappear from the Amended Complaint and the record, the quote from the hearing officer who acknowledged that a factor in consideration of the Plaintiff's termination was that his private e-mail addressed "District Government business".  Am. Compl. ¶171.  The Defendant's late effort to mischaracterize the Plaintiff's cause as speech about a "personnel issue" not only falls flat on the facts, but also misses

the mark as a matter of law. "Circuit has refuted "the proposition that a personnel matter *per se* cannot be a matter of public concern." *LeFande* , 613 F.3d at 1161." *Lewis v. Gov't of D.C.*, 161 F. Supp. 3d 15, 28 (D.D.C. 2015). Yes. The Plaintiff's private speech also spoke of a personnel matter. The retaliation he suffered at work for speaking out against Women being deliberately humiliated. A public concern.

Finally, the Defendant appeals to the authority of *Connick*, 461 U.S. at 152. *See* MTD. Am. Compl., at 12. In a narrow decision, the Court found in *Connick* that government can act to prevent speech which might cause a disruption in the workplace by undermining the directives of management. There, Connick passed out a survey in the workplace about management. Here, the Plaintiff wrote a private e-mail to two employees he'd known 16 years, sending it to their private e-mail addresses, and while he was out of the office and had no intention of returning until Management addressed his dire safety concerns. Am. Compl. ¶ 67. Comically, the Defendant accuses the Plaintiff of causing disruption and disturbance for those parts of his speech which recounted the disruption and disturbance which caused his constructive discharge. The Plaintiff did not threaten anyone's personal safety, nor was employee Grant fearful of the Plaintiff, nor did the Plaintiff pose a threat to workplace operations.  The Defendant libeled the Plaintiff to fire him.

The Plaintiff has also made the factual allegation that the First Amendment protections of religious speech and expression were violated. Am. Compl. ¶ 100. He mentions the "Divine" in communications with Management in addressing his public concern. He uses the semitic name "Allah" to invoke the Creator. The Plaintiff's e-mail to Grant, in its entirety, was his religious expression, an obligation. He wrote it in his private e-mail, the Plaintiff believes he must inform a friend before taking legal action against her to allow her to repent. And the Plaintiff has also made

a claim that the Defendant violated the First Amendment's protection of taste and style of his private speech. Am. Compl. ¶ 102. The Defendant receives a private e-mail to two people who the Plaintiff has been personal friends with for 16 years, having all sorts of private conversations, and accuses the Plaintiff of use of abusive offensive, unprofessional, or otherwise unacceptable language. Am. Compl. ¶ 71. The Plaintiff's original complaint also averred viewpoint discrimination. That claim was omitted inadvertently due to concerns about length.

Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6). The Amended Complaint sufficiently pleads municipal liability for violating the First Amendment under § 1983.

### b.    Fourth Amendment Claim

The Plaintiff's Amended Complaint pleads sufficient facts to establish a Fourth Amendment claim. "The Fourth Amendment protects not only property interests but certain expectations of privacy as well." *Katz v. United States*, 389 U. S. 347, 351. "But the fact of "diminished" privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." *Carpenter v. United States* 585 (2018). And particularly instructive in the instant case: "It follows that email requires strong protection under the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognized to serve." *United States v. Warshak* et al. 631 F.3d 266 (6th Cir. 2010).

The Plaintiff argues the Defendant's actions in the instant case are very alarming. As established by statements of facts in the Amended Complaint, the Defendant received a private e-mail of the Plaintiff from a third party, wherein were written the Plaintiff's private thoughts, public thoughts, his social concerns, as well as his religious expressions. Am. Compl. ¶¶ 55-56. The

Plaintiff had been out of the workplace, pleading his reputation be protected from being impugned as a person of violence. But somehow, the Defendant sends his private words to the Metropolitan Police Department, seeking criminal charges against the Plaintiff in an effort to further advance the cause of an employee who brought ruin to the Plaintiff's professional reputation. The results of the investigation are that the Plaintiff threatened no one in his e-mail. Am. Compl. ¶61. The Plaintiff decides to communicate with the Director himself. He begins by informing the Director of the great respect that he has for her. He tells the Director he means no harm to anyone. His mission, only, that Women in an office under her, the Director's leadership, be shown respect. Am. Compl. ¶67. And the Director responds by summarily removing the Plaintiff from employment, falsely portraying a personal e-mail written by him as a private citizen, in the light that his words were threats to someone's personal safety. Am. Compl. ¶¶ 73, 75-77. Now, because of the Defendant's actions, the Plaintiff's speech, intended for only two other persons, has been published widespread. The Plaintiff is confident every juror would be shocked and outraged and would find it a violation of the expectation of privacy, a director's egregious actions, publishing within government personnel records, available to the public under freedom of information laws, that an employee was terminated for threatening a co-worker's personal safety in a private conversation, when the Director knew the employee was innocent.

As a Career Service employee, the Plaintiff was invested with a property interest in his employment. *Sanders v. DC*, 522 F. Supp. 2d 83 (D.D.C. 2007). For the Defendant to claim the Plaintiff has failed to state a claim on his Fourth Amendment Count, the Defendant would have to first argue, and then somehow show, that the manner in which Director Nesbitt seized the Plaintiff's property interest was in accordance with D.C. Municipal Regulations and complied with the Fifth Amendment due process clause. However, the Defendant cannot advance such an

argument. Specifically, when Director Nesbitt received the Plaintiff's private communication, had

that communication investigated, then proffered the Plaintiff threatened the personal safety of a DC

government employee for the express purpose of depriving the Plaintiff of a property interest,

knowing her proffer was false. Am. Compl. ¶61. Furthermore, the Defendant can't show the

Plaintiff received prior notice of the adverse action giving him the opportunity to challenge it. The

Plaintiff, when he was made aware that his property interest had been seized, specifically requested

due process. No one responded. Am. Compl. ¶¶ 87-88. The record is clear. Director Nesbitt meant

to seize the Plaintiff's property interest without the possibility of return.

"These interests — property interests — may take many forms." *Board of Regents v. Roth*,

408 U.S. 564, 576 (1972). The Defendant's ginning an offense to seize the Plaintiff totally of his

property interest was unreasonable. "[T]he question of municipal responsibility for unconstitutional

official actions is one of fact so long as the plaintiff sets forth a "plausible" basis for the assertion of

liability." *Haynesworth v. Miller*, 820 F.2d 1245, 1274 (D.C. Cir. 1987).

Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended

Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6). The Amended Complaint sufficiently

pleads municipal liability for violating the Fourth Amendment under § 1983.

### c.     Fifth Amendment Claim
#### Substantive Due Process

The Plaintiff's Amended Complaint pleads sufficient facts to establish a Fifth Amendment

claim. The Supreme Court has noted that "property" is a broad and majestic term and may take

many forms. The dimensions of these interests are defined by independent sources such as state

laws which secure certain benefits and that support claims of entitlement to those benefits.

*Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1101 (10th Cir. 2004).

28

DC government law, the CMPA, is a source of law independent from the Constitution, securing benefits to DC government employees and their claims of entitlements to those benefits. The CMPA secures:

> *"Employees should have the following rights and responsibilities: The right to humane, dignified, and reasonable conditions of employment, which allow for personal growth and self-fulfillment, and for the unhindered discharge of job responsibilities."* D.C. Code §1-615.58(5).

The Plaintiff in his demand for substantive due process begs nothing of this Court neither the Supreme Court. The Plaintiff's lawsuit lays claim only to that which the sagacious legislators who enacted the CMPA entitled him as a government employee to have; "the right to humane, dignified, and reasonable conditions of employment allowing for unhindered discharge of job responsibilities."

The "employer-employee" relationship imposes upon an employer a legal duty to protect. *Feirson v. Dist. of Columbia*, 506 F.3d 1063, 1069 (D.C. Cir. 2007). In DC Municipal Regulations, this heighted duty employers owe to employees to make the work environment safe and conducive for productivity is accepted, acknowledged, and promulgated at 6-B DCMR § 2000.1:

> *"The District of Columbia government is committed to providing a safe and secure workplace for its employees. To provide a safe and secure workplace, employees must be able to perform their duties in a safe, secure, productive, and effective manner."* Am. Compl. ¶¶ 121, 129.

As pleaded in the Amended Complaint, on January 7, 2021, a day after the US Capitol was stormed, the Plaintiff was confronted with yet another threat, certainly not identical in scope and scale, but threatening nonetheless to his entitlement to a humane and dignified work environment allowing for productivity. One of his colleagues, a Woman, was bullied and humiliated by male colleague, Ivan Eaton. The Plaintiff believed in the District's Issuance 2019-8 Maintaining a Health

Workplace: Anti-Bullying Policy.

> *"All District employees are expected to show respect for one another and*
> *immediately report instances of workplace bullying when they see it happening…*
> *Agencies and managers must demonstrate reasonable care to promptly address all*
> *claims of workplace bullying."* Am. Compl. ¶¶ 12-14.

Apparently, the Plaintiff is alone in his belief in the Defendant's Anti-Bullying Policy. For his demanding Women in the employ of the people's government be treated with respect, the Plaintiff somehow is compelled to submit an affidavit he has no intention on maiming, murdering, or bringing vile physical harm to anyone at DC government. Am. Compl. ¶¶ 16-17. The Plaintiff is then informed his immediate supervisor has been told the Plaintiff threatened to kill DC employee Ivan Eaton, the culprit of the Plaintiff's bullying report. Am. Compl. ¶¶ 18. He informs Management he is being retaliated against, but the Defendant does nothing to safeguard the Plaintiff's reputation from being stigmatized as the *"workplace killer"*. Then, although staff are working from home due to the coronavirus pandemic, the Plaintiff is confronted by Management about threatening the personal safety of his 16 years closest co-worker, Sherita Grant. Grant has already been interviewed by Management concerning the Plaintiff, as Eaton gave her name to be interviewed. The Plaintiff now has Ms. Grant's written complaint against him. Grant is concerned with the Plaintiff's "anger and vitriol" with Eaton, adding: *"I pray that this issue can get resolved in a manner that everyone is safe"*. Ms. Grant also complains the Plaintiff attacked her during one of their private phone calls because of her friendship with Eaton. Ms. Grant explains this attack: *"As I worked out in dawned on me, that Mr. Bell was very adamant that I did not like these ladies, and I was very uncomfortable as to how the conversation ended."* Am. Compl. ¶¶ 22, 29. *See* [Exhibit 3]. The Plaintiff requests the Court take judicial notice. The Defendant's failure to immediately act in addressing the Plaintiff's concerns with Grant's slanderous allegation is what

emboldened her final act of slander against the Plaintiff. Am. Compl. ¶ 23. Because of Grant's accusations, the Plaintiff is summoned to a mediation meeting. Not only with Grant, but Eaton is invited. The Plaintiff is asked several questions intended to assure Grant and Eaton he will not "kill" them when staff return to the office. And at a second mediation, Eaton and Grant are still claiming to fear some vile act from the Plaintiff. Am. Compl. ¶ 28.

These interrogations of the Plaintiff hindered him in the performance of his duties. Consequently, he seeks an official investigation, so his reputation be cleared of being stereotyped and stigmatized as a Black male menace. These allegations made him vulnerable to violence in DC government under the guise of self-defense. Two mentally disturbed employees, accusing the Plaintiff of violence. *See* Exhibit 3. He writes to DCHR, copying the Mayor's Office in part:

> *"I now request DC Department of Human Resources to take over this complaint as discussions with my family and loved ones have convinced me that not only have I become the victim of harassment in the workplace and my professional character disparaged and maligned, but now my very life may be in jeopardy as well."* Am. Compl. ¶ 30.

The Defendant doesn't even acknowledge the Plaintiff's safety plea. Instead, the Defendant charges the Plaintiff AWOL. Am. Compl. ¶ 37.

The Plaintiff, during four months of his being designated AWOL, makes several pleas to the Defendant to address his workplace safety concerns so that he may return to work. The Defendant instead proposed to separate him from employment. The Plaintiff's Answer reads in part:

> *"This projection of me, this portrayal of me, as a person of violence presents an imminent safety risk for me and to my mental and emotional well-being. It causes a feeling of being feared by my co-workers, being watched by my Supervisors, and vulnerable to a physical assault in retaliation for the filing of my complaint under the guise of an act of self-defense, it haven been established I am a person of violence".* Am. Compl. ¶¶ 48-51.

The Defendant again fails to respond even though the Plaintiff's Answer to a Proposed Separation required one pursuant to 6-B DCMR § 1623.6 and 6-B DCMR § 1623.7. Am. Compl. ¶ 52.

The Plaintiff writes an e-mail from his private e-mail address to Ms. Grant and DC employee Monique Green. The Plaintiff informs them he plans to sue Grant and the Defendant. His e-mail is forwarded by Grant to DC Health Director Nesbitt. Am. Compl. ¶¶ 55-56. Nesbitt in turn sends his e-mail to the District of Columbia Metropolitan Police Department. Nothing is found. Am. Compl. ¶ 61. Shocked with the actions of the Director, the Plaintiff writes to her in part:

> *"And Dr. Nesbitt, I must say, again with all due respect, from what we are seeing in the world today, how could my pleas for a thorough investigation into claims of violence be totally ignored?...In addition, as two employees have made accusations of violence, where is DC Health's official report? The streets of DC cannot be safe if its governmental offices are not! Near a year now, I have been begging and pleading for DC Health to take action to make me safe from the lies, slander, and character assassination from Mr. Eaton and Ms. Grant...DC Health has left me unprotected from the shenanigans of Sherita Grant and Ivan Eaton. My ardent desire was to be able to work in an environment free from Women being bullied, humiliated, and ridiculed. Am. Compl. ¶ 67.*

Director Nesbitt responds by summarily removing the Plaintiff, libelously and maliciously accusing him of threatening the personal safety of a co-worker by e-mail, after reading the Plaintiff informing her: *"I have been begging and pleading for DC Health to take action to make me safe…"*. The Plaintiff asserts no caring and kind persons would find these acts short of shocking.

The Defendant argues by these facts the Plaintiff alleges nothing that shocks the temporary conscience. Additionally, that government employees have a humane and dignified work environment is not a right protected by the Constitution, even when stemming from an independent source of law. *See* MTD. Am. Compl., at 18. Moreover, it had no duty to safeguard the Plaintiff's well-being nor to act in response to his pleas that measures be taken to ensure his very life's safety

while in office space under the Defendant's control. The Defendant even believes the government is justified in exercising authority to besmirch and impugn an employee's reputation by falsely accusing him of threatening violence. The Plaintiff hopes for an opportunity to a trial before his peers who, when hearing what he was made to suffer at DC Health, may be more caring, compassionate, decent, humane, and kind. Albeit, as a matter of law, the Plaintiff anticipates the Court reaching the Defendant failed its heightened duty to the Plaintiff who as a DC government employee covered under the CMPA, had a right to: *"humane, dignified, and reasonable conditions of employment, which allow for personal growth and self-fulfillment, and for the unhindered discharge of job responsibilities."* D.C. Code §1-615.58(5). That DC government employees suffer a work environment accused, stereotyped, and stigmatized as a violent menace, when speaking against bullying, is not what the legislators who enacted D.C. Code §1-615.58(5) intended. The Plaintiff also hopes the Court finds the Defendant's inaction to answer his pleas then its false accusations against him, deprived the Plaintiff of a constitutional liberty interest in his reputation. *Lea v. District of Columbia* et al, No. 1:2022cv01396 - Document 41 (D.D.C.2023).

### c.    Fifth Amendment Claim
**Procedural Due Process**

Courts have determined it undisputable that the CMPA creates a property interest for employees governed by it. *McManus v. District of Columbia*, 530 F.Supp.2d 46, 72 (D.D.C.2007). Am. Compl. ¶ 137. Having established his property interest as an employee under the provisions of the CMPA, the Plaintiff's termination without due process was a violation of the Fifth Amendment Procedural Due Process clause. "Constitutional due process requires a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment". *Thompson v. District of Columbia,* No. 14-7210 (D.C. Cir. 2016), quoting *Cleveland*

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The government is never relieved of its duty to provide some notice and some opportunity to be heard prior to final deprivation of a property interest. *Propert v. District of Columbia,* 948 F.2d 1332, 292 U.S. App. D.C. 219 (D.C. Cir. 1991).

The court in *Thompson v. District of Columbia*, 967 F.3d 804, 813 (D.C. Cir. 2020) held Plaintiff Thompson was denied due process when three personnel actions resulted, as a matter of law, in his constructive termination without notice or a pre-termination hearing. The instant case is analogous to *Thomspon* in key aspects.

One, as the factual allegations in the Amended Complaint recounts, the Plaintiff informs the Defendant on July 9, 2021, that he would use paid leave and then unpaid extended leave until DCHR investigated his workplace safety complaints and took action to assure his work environment was safe, human, and dignified. Am. Compl. ¶ 34. On July 27, 2021, the Plaintiff is directed to report to work the next day or else. Am. Compl. ¶ 35. Having not heard anything from DCHR about his concern for his physical safety and mental health, the Plaintiff is unable to report to work. He is immediately charged AWOL without mitigating circumstances being factored in violation of 6B-DCMR 1602.2 nor is he given an opportunity to respond in violation of the Fifth Amendment and DC Code § 1-616.51. Am. Compl. ¶ 37.

Two, on December 13, 2021, the Plaintiff receives a Proposed Separation Letter. He is charged with job abandonment. The basis for the proposed separation is the Plaintiff was AWOL more than five (5) consecutive days, a status which he was never given an opportunity to challenge. Again, no mitigating circumstances are factored with the proposed separation in violation of 6-B DCMR 1602.2. Am. Compl. ¶¶ 45-47. The Plaintiff answers. He informs the Defendant he is being denied due process, willfully and purposefully. Am. Compl. ¶¶ 48-51. He never receives a hearing officer recommendation nor a final decision from the deciding official. Am. Compl. ¶ 52. The legal

effect was that the Plaintiff once again was deprived of due process in seeking to recover his property interest. Now, the Plaintiff has evidence from discovery in a related lawsuit against Grant, that the hearing officer assigned to the proposed separation recused. Another hearing officer outside of DC Health was not assigned until four months after the time frame specified at 6B-DCMR 1622.5 establishing when a hearing officer's recommendation must be served upon an employee. The hearing officer upheld the decision to separate the Plaintiff. When sending the recommendation to DC Health, the hearing officer reported there was no Answer from the Plaintiff. The original hearing officer learns of this and corrects. The Plaintiff did answer. The original hearing officer further advises that it is vital to revise the recommendation to reflect the Plaintiff's Answer. However, DC Health never sends the second hearing officer the Plaintiff's Answer. A decision is made to throw under the rug the entire plot to fire the Plaintiff. [Exhibit 4]. Thus, the Defendant's willful violation of law which the Plaintiff's Answer exposed would never see the light of day.

Three, on June 2, 2022, the proposing official, the Plaintiff's immediate supervisor, claims he discovered a procedural error. The Plaintiff is directed to return to work, which will be without prejudice. Am. Compl. ¶ 53. The Plaintiff's supervisor did not generate the letter, DC Health Human Resources Office did. This ruse of the Defendant violated 6-B DCMR 1623.1 as a proposing official is not to decide on the same matter. Nonetheless, admission of a procedural error proves the Plaintiff was injured by being denied due process but without compensation for the injury sustained. The next day, June 3, 2022, the Plaintiff is directed he may not return to work. His status has reverted to AWOL. He is not informed why. Am. Compl. ¶ 54.  On July 19-20, 2022, the Plaintiff comes home, retrieves his mail, and learns he has been summarily removed from employment. For a third time no mitigating circumstances were considered and for a second time the Plaintiff was not afforded an opportunity to respond. On July 31, 2022, the Plaintiff tells the

Defendant he has been denied due process and asks for it. [Exhibit 1]. The Defendant never responds. Am. Compl. ¶¶ 79-80, 87-88.

The Plaintiff humbly requests the Court take judicial notice. Three times now has the Defendant replied to the Plaintiff's averment that DC Health violated the Fifth Amendment's procedural due process clause. Defendant's responses demonstrate fair notice has been given. And in no way does the Defendant dispute the facts that on three (3) distinct instances of an adverse employee action, the Plaintiff was not afforded due process. The matter of dispute between the Defendant and the Plaintiff is therefore a legal one. The Plaintiff makes a claim that a failure to afford an employee the opportunity to challenge an adverse action before being deprived of a property interest are "*constitutional violations*". The Defendant's understanding of the law, however, is that denying a governmental employee due process on three (3) distinct instances are *"mere violations". See* MTD. Am. Compl., at 19. As controlled the ruling in *Thompson III*, the District of Columbia was liable because the Plaintiff never was afforded a hearing to challenge the first adverse action diminishing his property interest. In the instant case, the first adverse action which the Plaintiff was never afforded an opportunity to challenge was his AWOL. The Plaintiff was not terminated until a year afterwards.

Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6). The Amended Complaint sufficiently pleads municipal liability for violating the Fifth Amendment under § 1983.

**B**.     **Plaintiff has Sufficiently Pleaded a Whistleblower Act Claim**

The Plaintiff's Amended Complaint pleads sufficient facts on his D.C. Whistleblower Act claim. The DCWPA prohibits employers from "tak[ing], or threaten[ing] to take, a prohibited

personnel action or otherwise retaliat[ing] against an employee because of the employee's protected disclosure." D.C. Code § 1-615.53. *Johnson v. District of Columbia*, Civil Action No.: 20-2944 (RC). Protected disclosure includes any disclosure of information by an employee to a supervisor or public body that the employee reasonable believes to show abuse of authority in connection with the administration of a public program; a violation of a federal, state, or local law, rule, or regulation; or a substantial and specific danger to the public health and safety. *Id.*

As the factual allegations in the Amended Complaint recount, the Plaintiff was terminated for a private e-mail he sent to two DC government co-workers wherein he mentioned his intent to sue DC government for depriving him of procedural due process in retaliation for his demands for substantive due process. In his e-mail the Plaintiff was emphatic:

> *"They don't want the Truth to be known so, they actually tried to fire me! Even emotionally messing with me, saying they don't know why I aint coming to work. Not acknowledging my cause and concerns. And I really lit em up then! Now they got a dilemma. Oh. But, the Truth is going to get out! My lawsuit will be filed in a few days now…And not only DC Health I will be suing…".* Am. Compl. ¶85.

Director Nesbitt, who executed the Final Summary Removal of the Plaintiff, said she considered the recommendations of the hearing officer who said:

> *"Although he used a personal e-mail account to send his June 1, 2022 email to Ms. Grant's personal email account, his email referenced District Government business, in particular his objections to the manner in which certain HAHSTA matters are conducted."* Am. Compl. ¶ 171.

Although DC Health Officials received the Plaintiff's e-mail from a third party, there exists persuasive case law indicating indirect disclosures may satisfy the DCWPA requirement protected disclosures must be made to a public body or official. *Johnson v. Dist. of Columbia*, Civil Action 20-2944 (RC), 23 (D.D.C. Mar. 28, 2024). However, in the instant case, the Plaintiff's DCWPA claim does not hinge on his private e-mail. When the Plaintiff avers, he was terminated for his

speech in a private e-mail, he only means this was the Defendant's proffer. The Amended

Complaint pleads factual allegations of other protected disclosures to officials. The Plaintiff's

ardent belief of violations of laws and with the dangers of unmitigated threats of violence in the

workplace were disclosed by his writing to Director Nesbitt in part:

> *I am sure at least a few jurors may wonder, how did DC Health determine to take action against Mr. Bell for sending the communication, yet be totally silent and inactive to its contents?... And Dr. Nesbitt, I must say, again with all due respect, from what we are seeing in the world today, how could my pleas for a thorough investigation into claims of violence be totally ignored?...In addition, as two employees have made accusations of violence, where is DC Health's official report? The streets of DC cannot be safe if its governmental offices are not!... DC Health has left me unprotected from the shenanigans of Sherita Grant and Ivan Eaton. My ardent desire was to be able to work in an environment free from Women being bullied, humiliated, and ridiculed.* Am. Compl. ¶ 67.

And the Plaintiff also made a protected disclosure directly to HAHSTA Senior Director Clover

Barnes and to DC Human Resources Officer John Parham. The Plaintiff disclosed to them in part:

> *To claim the Proposed Separation submitted to me was procedurally erroneous is disingenuous. The Proposed Separation was fraudulent, misleading, and further disparaging of my professional character. Mr. Fox and Mr. Parham conspired to produce a document with the intention of serving as justification to terminate me in violation of Chapter 16 of the DC Personnel Manual.* Am. Compl. ¶ 60.

The factual allegations in the Amended Complaint show the proffer for the Defendant's

decision to terminate the Plaintiff is pretextual. Am. Compl. ¶ 61. The Plaintiff did not threaten the

personal safety of employee Grant. The Plaintiff was terminated for his protected disclosure. The

Plaintiff informed Director Nesbitt of Grant's statements to the court:

> *"Like I said, Mr. Bell had--did not threaten me..." "...not that I'm--was in fear of my physical harm, but what Mr. Bell continues to do is try to emotionally attack me...".* [Exhibit 2, Grant vs. Bell, District Court Transcripts, Pg 8] Am. Compl. 63.

Further evidence that Director Nesbitt retaliated against the Plaintiff for his protected

disclosures is the progression of the claim against the Plaintiff from the Summary Removal Notice to the Final Summary Removal Notice. In the Summary Removal Notice, Director Nesbitt writes:

> *In your e-mail, you made several statements that viewed in their entirety can be considered threats against Ms. Grant's personal safety.*

After the Plaintiff's protected disclosure to Director Nesbitt, her language is more aggressive:

> *"You do not have to be told that you cannot email threats to the personal safety of your coworker. Making threats can be considered as criminal conduct."* Am. Compl. ¶ 76.

First it was the Plaintiff's statements *"can be"* considered threats. After his protected disclosure to the Director, it was the Plaintiff had made threats that can be considered criminal conduct.

The Plaintiff had no knowledge of final adverse action for his protected disclosures until arriving home and retrieving the mail on July 20, 2022. Am. Compl. ¶ 70. The Final Summary Removal was executed on July 15, 2022. The Plaintiff filed this lawsuit on July 14, 2023.

Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6). The Amended Complaint sufficiently pleads a DCWPA claim.

### C.    Plaintiff's Statutory and Tort Claims are Meritorious and in the Court of Proper Jurisdiction

The Plaintiff's foundational claims are premised on violations of §1983. As such, this Court has jurisdiction. *Roache v. District of Columbia*, 654 A.2d 1283, 1284 (D.C. 1995). The Plaintiff's statutory and common law tort claims arise from the same set of facts as his constitutional claims and thus are "pendent" pursuant to 28 U.S.C. § 1343. *Da'Vage v. Dist. of Columbia Hous. Auth.*, 583 F. Supp. 3d 226, 240 (D.D.C. 2022). The Plaintiff is not seeking an alternative forum.

Moreover, respectfully, the Defendant's counsel shows this Honorable Court gross

ignorance of the law. As the court emphasized in *King v. Kidd*, 640 A.2d 656, 663 (D.C. 1993) ("We did not hold, however, that the CMPA preempts tort claims in general or all claims ******** in particular. Rather, the CMPA implicitly preempts a common law action only if the employee claims wrongful treatment and injury cognizable as a "personnel issue" under the Act's "performance ratings," "adverse actions," and employee "grievances" provisions."). In addition, "It is certainly true that "'government employees only lose common law rights of recovery if the statute provides redress for the wrongs they assert" (*id.* at 6-7 quoting *Robinson*, 748 A.2d at 411))," *Amobi v. Brown*, 08-cv-1501 (KBJ), 24 (D.D.C. Aug. 23, 2021). The controlling CMPA statutes do not provide that they are exclusive and preclude common law claims. *District of Columbia v. Thompson*, 593 A.2d 621, 629 (D.C. 1991).

Moreover, the Plaintiff asserts his injuries were in retaliation for making disclosures protected by the First Amendment and DC Whistleblower Act. Acts of an agency official when carried out with malice and animus in violation of law are not personnel actions covered by the CMPA. *Winder v. Erste*, Civil Action No. 03-2623 (JDB), 22 (D.D.C. Mar. 31, 2005).

The Plaintiff in the Amended Complaint has also pleaded three (3) counts under the DCHRA which makes it unlawful to discriminate against a person with respect to his conditions or privileges of employment, for any reason that would not have been asserted but for, wholly or partially, their actual or perceived sex, sexual orientation, or religion. D.C. Code § 2–1402.11(a)(b).

The Plaintiff informed the Defendant that its failure to investigate his report of bullying according to DCHR Issuance 2019-8 Maintaining a Healthy Workplace, purposefully subjected him to discrimination in the conditions of employment. *His* reporting of an incident of workplace bullying was *not* investigated according to policy. Am. Compl. ¶ 14. The Plaintiff specifically

notified the Defendant: "*I feel as if I was discriminated against because I was a Man filing a complaint involving gender bullying of a Woman.*" Am. Compl. ¶¶ 51, 175-180. The Defendant failed to act. The Plaintiff specifically notified the Defendant that he felt because of his sexual orientation, his conditions of employment were different than others. The agency preached against lesbian, gay, bi-sexual, transgender and others being stigmatized and stereotyped. But in not responding to his pleas, instead entertaining malicious allegations that he was a person of violence who needed the additional scrutiny of management to keep the workplace safe, the Defendant was purposefully stereotyping the Plaintiff. He notified the Defendant writing in part: "*For speaking up for Black Women, HAHSTA and DC Health is now engaging in viciously stereotyping Baron Bell, a heterosexual Black Male, as typical "Angry Black Man".* Am. Compl. ¶¶ 53, 181-187.

The Amended Complaint in support of the Plaintiff's DCHRA claims specifically refers to discrimination based on sexual orientation by his immediate supervisor Anthony Fox. Am. Compl. ¶ 185. Alas, the Defendant acknowledges and agrees that the Plaintiff has pleaded a factual allegation. However, the Defendant's opposes, claiming the Plaintiff offers no other facts. *See* MTD. Am. Compl., at 16. The Defendant has not, however, cited any authority as to the types and number of "other" facts required to state a DCHRA claim. And the Defendant acknowledges the disparate no responses to the Plaintiff's safety concerns as compared to the swift responses by the Defendant to DC employee Grant's alleged safety concerns. However, the Defendant argues Ms. Grant enjoyed favorable treatment in comparison to the Plaintiff due to "*different underlying circumstances.*" *See* MTD. Am. Compl., at 23. The difference, Grant was involved in a conspiracy with Ivan Eaton, whom the Plaintiff reported pursuant to DC government's Anti-Bullying Policy, as far back as January 2021, making claims the Plaintiff was a violent threat to the safety of the office. Am. Compl. ¶¶ 28-29. So devasting to Ms. Grant was the Plaintiff's reporting Mr. Eaton for

gender bullying, that she had mental, even physical concerns with the Plaintiff and reported so to

Director Nesbitt. Am. Compl. ¶ 58. The difference, the Plaintiff was in true danger from two

maniacal and mentally disturbed employees flaming accusations of violence. And that Grant is a

Woman and the Plaintiff a Man. The Plaintiff sounded the alarm to DCHR, copying DC Health and

the Mayor's office: "*It is not safe for Mr. Ward, Ms. Walker, or me to have Mr. Eaton and Ms.*

*Grant in the workplace.*" Am. Compl. ¶ 30. Unlike the swift response to employee Grant's

concerns, the Defendant did nothing to address the Plaintiff's concerns with accusations of

violence, rather, charged him AWOL. The Plaintiff's constructive discharge due to unmitigated

rumors of violence the Defendant now deems a "*unilateral decision.*" *See* MTD. Am. Compl., at 3.

 The Plaintiff directly asked Director Nesbitt about the *"difference in circumstances"*:

> "*Finally, Dr. Nesbitt, I could not help but notice where you inform Ms. Grant of*
> *your goal to ensure that you take the appropriate and necessary actions to provide a*
> *safe workplace environment for your DC Health team members. Is it something*
> *peculiar to me then? Perhaps, I do not fit in any of the Groups HAHSTA and DC*
> *Health preaches against their being stigmatized?*" Am. Compl. ¶ 66.

The Director answers the Plaintiff a month later, making good on her promise to employee Grant,

by accusing the Plaintiff of threatening the personal safety of Ms. Grant. Am. Compl. ¶ 57, 73. The

Defendant's Director knew, from an official investigation into the Plaintiff's e-mail, that he

threatened no one. To be so comfortable with falsely accusing a person of violence evidences the

type of hatred and malice the kind motivated out of deep religious hatred. Am. Compl. ¶¶ 188-192.

 The Plaintiff asserts if not but for discriminatory reasons, the Defendant failed to address

his working conditions and then terminated his employment upon a maliciously false allegation.

 Plaintiff humbly requests the court to deny the Defendant's motion to dismiss the Amended

Complaint and find it does satisfy Fed. R. Civ. P. 12(b)(6) as the Court has pendent jurisdiction

over his tort claims and he has stated sufficient factual matter, particularly in the pleading stage, to

state a claim plausible on its face for DCHRA violations. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## CONCLUSION

The Plaintiff's claim is premised on Defendant's violations of substantive due process. He

argues he was deprived of entitlements, not created by the Constitution, but protected by the

Constitution because they were created by an independent source of law. *Board of Regents v.*

*Roth*, 408 U.S. 564, 577 (1972). That independent source of law is the CMPA which entitles DC

government employees the right to humane, dignified, and reasonable conditions of employment.

The Defendant argues in response that the Plaintiff's Amended Complaint fails to state a claim

because the Constitution does not protect rights and entitlements created by independent sources.

Furthermore, the Defendant argues government has no duty to protect the well-being of its

employees while working in a space under the government's sole supervision.

The Defendant's opposition to the Plaintiff's claims has nothing at all to do with the form in

which his factual allegations have been pleaded. The Defendant's opposition is possible because

of Defendant's misinterpretations of legal precedents and gross disregard for the facts. This is

apparent with the Defendant's contention that the Plaintiff failed to provide § 12-309 notice. *See*

MTD. Am. Compl., at 23-24. The Plaintiff dedicated an entire section of the Amended Complaint

to show this requirement satisfied, with exhibits. *See* Am. Compl., at 6. And there he cites *Turpin*

*v. DC* as an authority: "But just because the Mayor has delegated the duty to receive Section 12-

309 notices to the Office of Risk Management does not mean that a plaintiff cannot avail [him]self

of this other official channel of communicating with the Mayor to satisfy the statute. After all, the

statute only "clearly demands notice to *the Mayor*."  *Turpin v. DC,* Civil Action No. 22-1807

43

(TJK). The Honorable Judge assigned to this case has ruled the same, and on the contents of such notice. *Cornish v. Dist. of Columbia*, 67 F. Supp. 3d 345, 371 (D.D.C. 2014). However, the Defendant acts as if it has jurisdiction over the courts and proclaims the law only allows satisfaction of § 12-309 by *"particular means"*. *See* MTD. Am. Compl., at 23.

But what is especially troubling to the Plaintiff, leading him to invoke Rule Fed. R. Civ. P. 11(b)(1) against the Defendant a second time, is that the Plaintiff's exhibit to his Amended Complaint showed that on December 19, 2022, Vanessa Careiro of the Deputy General Counsel of the Office of the Mayor, sent an e-mail with the subject: "Baron Jamaal Bell - D.C. Code Ann. § 12-309 Litigation Hold and Notice of Claim", to DC Health General Counsel Phillip Husband. On the same day, Mr. Husband sent an e-mail to DC Health Human Resource Officer John Parham and Counsel Charlene Wills, instructing them both: "Baron Bell has made a claim through counsel. Please preserve all documents." Am. Compl. Exhibit 2, ¶ 9. Therefore, the Plaintiff has provided this Honorable Court with evidence that the Defendant District of Columbia, its Office of the Mayor and its Department of Health where the Plaintiff worked, received the Plaintiff's pre-suit notice in December 2022. The Defendant, however, is somehow still presenting to the Honorable Court that the Plaintiff has not satisfied the statute, in spite of the factual evidence?

Rule 8(e) requires pleadings to be construed so as to do justice. As the Defendant has in its MTD. Am. Compl. responded to every one of the Plaintiff's federal claims, justice demands the Honorable Court to judge the Amended Complaint has provided fair notice as is the purpose of Federal Rule 8a. This is an employment case. The Defendant knew the date, time, place, and all the particulars and the nature of all claims possible in the instant case when it executed a Final Summary Removal of the Plaintiff on July 15, 2022.

No pleading of the Plaintiff, no matter style, form, or length, will the Defendant not respond to other than with a motion to dismiss. Unless the pleading is stripped of the facts and all quotes from the Plaintiff's multiple pleas highlighting the Defendant's reckless and deliberate indifference. When a party intends to deny all allegations of a pleading regardless, as clearly as is the case here, Fed. R. Civ. P. 8(b)(3) provides great leeway. The style, form, and length of the Plaintiff's Amended Complaint in no way burdens the Defendant. The Defendant can simply deny in general all the allegations in the Plaintiff's pleading. The Federal Rules of Civil Procedure allow for it.

For these reasons the Plaintiff both humbly and respectfully requests the Honorable Judge to deny the Defendant's Motion to Dismiss the Amended Complaint.

Date: August 27, 2024                                        Respectfully submitted,

Baron J. Bell, *Pro se*
12212 Asbury Drive
Fort Washington, MD 20744
(240) 350-1546 phone