**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| BARON JAMAL BELL, |
| *Plaintiff*, |
| v. |
| DISTRICT OF COLUMBIA, |
| *Defendant*. |

23-cv-02036 (RC)

**REPLY IN SUPPORT OF DEFENDANT**
**DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Baron Jamal Bell's 66-page, 251-paragraph Amended Complaint identifies 15 claims related to his prior employment at the HIV/AIDS, STD, Tuberculosis, and Hepatitis Administration, a subdivision of the District of Columbia Department of Health (DOH), and his termination from that agency in 2022. *See* Am. Compl. [17]. Defendant District of Columbia (the District) moved to dismiss, Def.'s Mot. Dismiss Am. Compl. (Def.'s Mot.) [22], because the Amended Complaint suffers from the same flaws that the Court cited as grounds to dismiss his original complaint for failure to comply with Fed. R. Civ. P. 8, *see* June 5, 2024 Mem. Op. at 8–13 (Mem. Op.) [16], and because all 15 claims fail under Rule 12(b)(6). Plaintiff's arguments in opposition are unavailing and the Court should, as a result, dismiss the Amended Complaint.

**ARGUMENT**

I.    **The Amended Complaint's Excessive Length, Lack of Clarity, and Routine Mingling of Allegations, Commentary, and Legal Argument Violate Rule 8.**

Plaintiff insists that because he did not include "[e]very communication to Management occurring within [the relevant] time span," Pl.'s Answer to Def.'s Mot. Dismiss Am. Compl. (Pl.'s Opp'n) at 7 [25], he has satisfied the Court's directive, and the guidance of relevant Rule 8 cases, to "pare down" his pleading "instead of loading up [his] pleading with every conceivable detail that related to any and all aspects of [his] employment."  Mem. Op. at 13 (quoting *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 418 (D.D.C. 2007), *aff'd sub nom. Cooper v. District of Columbia*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017)).  He is mistaken.  At 66 pages and 251 paragraphs, the Amended Complaint is still needlessly prolix and akin to the deficient pleadings in *Ciralsky v. CIA*, 355 F.3d 661, 665 (D.C. Cir. 2004) (61 pages and 105 paragraphs), *Jiggetts*, 319 F.R.D. at 414–15, (78 pages), and *Unfoldment, Inc. v. District of Columbia*, No. 07-CV-1717, 2007 WL 3125236, at *1 (D.D.C. Oct. 24, 2007) (368 paragraphs and eleven footnotes over 61 pages).

Even though the District excavated a rough outline of Plaintiff's narrative from his dense pleading, the Amended Complaint still violates Rule 8.  *See Jiggetts*, 319 F.R.D. at 418 ("Plaintiffs are also wrong to contend that their claims are sufficiently clear because Defendants 'were able to prepare a table of allegations, setting out the factual and legal basis for each claim,' and thus should be deemed to have 'sufficient notice of the factual allegations for each of the claims that the plaintiffs are seeking relief.'").  A burden that is barely surmountable is still unjustified, particularly in this case, which, as the Court noted, concerns a short series of events all "related to Mr. Bell's employment with the District, his concerns about the purported bullying of a colleague, and his conflicts with his coworkers Mr. Eaton and Ms. Grant," as compared to "a

case that spans many years, involves a large number of plaintiffs, or combines claims that have a distinct underlying factual basis."   Mem. Op. at 9.

Moreover, although Plaintiff insists that he "has not mixed law with facts," he effectively concedes that he has done so, arguing that he has provided enough law to stave off an anticipated "attack . . . for lacking legal arguments."  Pl.'s Opp'n at 6.  Indeed, as described in the District's moving brief, the Amended Complaint is rife with long paragraphs that routinely mix factual allegations and legal conclusions, Def.'s Mot. at 9 n.1 (collecting examples), with the effect that "the 'need to file an answer that addresses each paragraph in the [Amended] Complaint' would impose a remarkable, and unjustified, burden on the District, to say nothing of the Court's task of parsing 'seemingly irrelevant and unnecessary facts that obscure[] the actual factual basis of Mr. Bell's claims' in an effort to 'evaluate whether those arguments should succeed or fail,'" *id.* at 9 (internal quotation marks omitted) (quoting Mem. Op. at 11–12).  The Amended Complaint fails to adequately cure the defects of the original pleading and should be dismissed for failure to comply with Rule 8.

**II.      Plaintiff's Amended Complaint Fails Under Rule 12(b)(6).**

The Opposition's arguments in support of Plaintiff's substantive claims add little color to the Amended Complaint and provide no meritorious counter to the District's arguments for dismissal.

**A.      Plaintiff Fails to State Any Plausible § 1983 Claim (Counts I through III).**

**1.      Plaintiff Fails to Identify Any Municipal Custom or Final Policymaker to Establish Municipal Liability.**

To state a § 1983 claim for a constitutional violation by the District, Plaintiff is required to plead facts demonstrating "(1) an official policy explicitly adopted by D.C., (2) actions by a D.C. policymaker with final decision-making authority, (3) repeated behavior by D.C. municipal

employees that have reached the level of a custom, or (4) a failure to act by D.C. that shows

deliberate indifference to the potential for such violations." *Givens v. Bowser*, No. 23-7042,

2024 WL 3659343, at *3 (D.C. Cir. Aug. 6, 2024). Moreover, he has to "plead 'the elements of

the relevant type of municipal policy'" because courts are "'unable to determine' whether a

plaintiff has 'provided plausible support for her claim' when she does not plead those elements."

*Id.* (quoting *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015)). Plaintiff's

Amended Complaint flunks both requirements.

The Opposition does not and cannot point to any allegation in the Amended Complaint

showing, or even suggesting, that the circumstances at issue are like any other instance of

municipal conduct. Plaintiff thus fails "[t]o clear [the] high hurdle [of demonstrating a municipal

custom]," that requires practices "so persistent and widespread as to practically have the force of

law." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Connick v.

Thompson*, 563 U.S. 51, 60 (2011)). Instead, he alludes to a deliberate indifference theory with

reference only to his own personal situation, claiming that "18-months of deliberate indifference

to his need to be made safe . . . is more than enough time to consider a pattern so consistent that

they have become custom," Pl.'s Opp'n at 20, and a final policymaker theory, arguing that the

Health Director acted in such a way as to reflect District policy.

Both theories fail. Plaintiff describes one employment dispute in which he complained

about how threatened he felt by his co-workers' responses to his erratic behavior. *Id.* The fact

that he levied versions of the same grievance many times does not establish a "persistent" or

"widespread" municipal custom or policy, *Page*, 999 F. Supp. 2d at 284, and over 66 pages, the

Amended Complaint never alleges comparable conduct by the District or its employees that

might establish a custom or policy, *see Aubin v. District of Columbia*, 107 F. Supp. 3d 169, 172

(D.D.C. 2015) ("merely rel[ying] upon the one incident of [plaintiff's] own arrest in his allegations . . . is legally insufficient to allege a municipal custom or policy"); *Brookens v. United States*, 981 F. Supp. 2d 55, 64 (D.D.C. 2013) (dismissing § 1983 claims where plaintiff relied on own personal circumstances to show policy or custom). Nor do his grievances give rise to deliberate indifference, which "is an objective standard that means that when a city is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'" *Tyson v. District of Columbia,* No. 20-CV-1450 (RC), 2021 WL 4860685, at *12 (D.D.C. Oct. 19, 2021) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).[1] "It is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at *12 (quoting *Connick*, 563 U.S. at 61). "To prevail, [P]laintiff must show more than simple or even heightened negligence; the District's indifference must be conscious, or at least reckless." *Byrd v. District of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (citing *City of Canton*, 489 U.S. at 389), *aff'd sub nom. Byrd v. Gainer*, No. 03-7196, 2004 WL 885228 (D.C. Cir. Apr. 26, 2004). Plaintiff identifies nothing in his amended pleading that satisfies this stringent standard.

Plaintiff also insists that the Health Director is a final policymaker whose decisions are District policies for the purposes of determining municipal liability but rests this conclusion on the mere fact that the Director is an agency head and "[a] final decision maker typically must be at least an agency head." Pl.'s Opp'n at 20 (citing *Coleman v. Dist. of Columbia*, 828 F. Supp.

---

[1]     The analysis of whether a plaintiff has plausibly alleged deliberate indifference based on a municipality's failure to respond to a pattern of misconduct overlaps with the analysis of whether policymakers knowingly ignored a custom under the third *Baker* test. *Tyson v. District of Columbia,* No. 20-CV-1450 (RC), 2021 WL 4860685, at *13 (D.D.C. Oct. 19, 2021) (citing *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

2d 87, 91 (D.D.C. 2011)).[2]  But a bare allegation that an agency head was the ultimate

decisionmaker is not enough to state a plausible claim for relief.  *See Jones v. District of*

*Columbia*, No. CV 23-1488, 2024 WL 1213326, at *6 (D.D.C. Mar. 21, 2024) (rejecting race

discrimination and retaliation claims against the District brought under 42 U.S.C. § 1981 and

enforced under 42 U.S.C. § 1983 and based on policymaker theory where complaint alleged

MPD Chief was "ultimate decision maker[]" for personnel decisions).  Indeed, the delegation of

some functions to agency heads does not render all actions of agency heads to be those of a final

policymaker for *Monell* purposes.  *See Coleman*, 828 F. Supp. 2d at 92 (holding that D.C. Fire

Chief was not final policymaker); *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75

(D.D.C. 2011) (holding that Director of the District of Columbia Department of Parks and

Recreation was not a final policymaker because "[no] portion of the D.C. Code specifically

grant[ed] authority to the DPR director to promulgate administrative rules or anti-harassment

policies and procedures" and that an official is not a policy maker "[i]f an official's discretionary

decisions are constrained by policies not of that official's making").  And even if Plaintiff's

termination could conceivably be a final policy by virtue of the Director's delegated authority, it

would not establish that subordinate officials' handling of Plaintiff's employment travails was

similarly an act of municipal policymaking.  *See Jones*, 2024 WL 1213326, at *7 (actions taken

---

[2]      Plaintiff relies on the statement in *Banks v. District of Columbia*, 377 F. Supp. 2d 85, 91
(D.D.C. 2005), that "The Circuit Court [in *Triplett v. District of Columbia*, 108 F.3d 1450 (D.C.
Cir. 1997)] found that one of the final policymakers was the Director of the D.C. Dept of
Corrections because he was responsible for 'the general direction and supervision' of the
Department."  This non-binding case appears to attribute *Triplett*'s reference to "the general
direction and supervision" to the Director of Corrections and the Mayor, although the language
in *Triplett* appears to apply only to the Mayor.  *See Triplett*, 108 F.3d at 1453 (referring to "a
Director appointed by the Mayor, who himself is responsible for 'the general direction and
supervision' of the Department" (quoting D. C. Code § 24-442 (1981))).

by agency head subordinates, including supervisors, fail to satisfy the prerequisites for municipal

liability to sustain a *Monell* claim).

2.    **Plaintiff's Constitutional Claims under § 1983 Lack Merit.**

a.  **First Amendment**

Plaintiff alleges in the Amended Complaint that the District violated the First

Amendment "by terminating the Plaintiff's employment for private speech, in the form of an e-

mail, where the Plaintiff spoke on a matter of public concern and was engaged in religious

expression," Am. Compl. ¶ 92, but he now insists that his "private e-mail is not the only form in

which he expressed his public concern with the fair treatment of Women," Pl.'s Opp'n at 22.

This expansion of his claim is foreclosed, as "it 'is axiomatic that a complaint may not be

amended by the briefs in opposition to a motion to dismiss.'"  *Statewide Bonding, Inc. v. U.S.*

*Dep't Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) (quoting *Coleman v. Pension*

*Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).  In any event, based on any of the

many communications he reproduces, his claim still fails because his speech was essentially

private in nature but disruptive to the workplace.  *See Rankin v. McPherson*, 483 U.S. 378, 388

(1987) (recognizing government employers' "strong state interest" in avoiding "interference with

work, personnel relationships, or the speaker's job performance [which can] detract from the

public employer's function" that may outweigh a public employee's desire to express himself).

Rather than speaking "as a citizen on a matter of public concern," *Mpoy v. Rhee*, 758 F.3d 285,

290 (D.C. Cir. 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)), Plaintiff's stated

desire to affect his "workplace," Pl.'s Opp'n at 22 (quoting Am. Compl. ¶ 51), or "work

environment," *id.* (quoting Am. Compl. ¶ 67), underscores the fact that he complained to

management "as an employee," *Mpoy*, 758 F.3d at 290.  And Plaintiff's focus on a single

offending comment in the workplace and his various grievances about it suggest that he spoke

not on a matter of public concern, but on "a personal employment dispute." *Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983).

Plaintiff's other First Amendment theories lack merit. The Opposition invokes First Amendment claims related to religion and his "taste and style of . . . private speech," Pl.'s Opp'n at 25–26, but neither the Amended Complaint nor the Opposition provides any basis to infer that any government action was motivated even in part by his religious speech or his "style" of speech. Finally, Plaintiff's passing reference to viewpoint discrimination, *id.* at 26, is both inadequate and untimely. *See Statewide Bonding, Inc.*, 980 F.3d at 117 n.5.

### b.  Fourth and Fifth Amendments

Plaintiff reasserts his erroneous theory that his firing was an unlawful seizure of his property interest in employment. Pl.'s Opp'n at 26–28. As the District's moving brief explained, this is a Due Process claim dressed in the language of the Fourth Amendment. *See* Def.'s Mot. at 17. Indeed, as support, the Opposition relies on *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972), a Due Process case that never mentions the Fourth Amendment.

Assessed under the Fifth Amendment, Plaintiff's claims still fail. The Opposition's substantive due process argument presents three discernible points: first, that the Comprehensive Merit Personnel Act (CMPA) and District anti-bullying policy establish a due process right to "humane, dignified, and reasonable conditions of employment, which allow for personal growth and self-fulfillment, and for the unhindered discharge of job responsibilities," Pl.'s Opp'n at 33 (quoting D.C. Code § 1-615.58(5)); second, that the employer-employee relationship creates a heightened duty to protect Plaintiff, *id.* at 29; and third, that the District's conduct shocks the contemporary conscience, *id.* at 9. Plaintiff is wrong on each point.

As the District's moving brief explained, there is no constitutional right to a "humane, dignified" work environment, and the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26 (1985)); *see also Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 n.8 (D.C. Cir. 2006) (recognizing "[D.C. Circuit's] holding in *Washington* [*v. District of Columbia*, 802 F.2d 1478 (D.C. Cir. 1986)] and the Supreme Court's holding in *Collins* that there is no constitutional right to a safe workplace"). And District law and policy cannot serve as a font of substantive constitutional rights. Nor does the CMPA impose on the District a heightened constitutional duty to Plaintiff as a District employee. "In the public employment context, [the D.C. Circuit has] consistently rejected imposing a heightened employer-to-employee obligation because of the absence of a state-imposed restraint on liberty." *Estate of Phillips*, 455 F.3d at 406. And the Opposition adds nothing new to suggest any of the alleged government conduct was so conscience-shocking as to violate the Fifth Amendment.

Similarly, Plaintiff reiterates but adds no new authority to support his procedural due process claim. The thrust of his play-by-play retelling is that his placement in absent-without-leave (AWOL) status and eventual termination deprived him of his property rights without due process. However, the Amended Complaint unambiguously explains his unilateral decision to stop going to work, which lead to his AWOL designation. *See* Am. Compl. ¶ 36. And the notion that his termination lacked sufficient notice, Pl.'s Opp'n at 36, contrasts his concession that the Health Director has authority to issue summary removals, *id.* at 19 (citing D.C. Mun. Regs. tit. 6B § 1616.3). The Amended Complaint does not allege facts from which to infer that

Plaintiff's summary removal violated any due process right.  And, as the District noted in its moving brief, "the CMPA satisfies constitutional due process requirements," *Owens v. District of Columbia*, 923 F. Supp. 2d 241, 250 (D.D.C. 2013), *aff'd*, 606 F. App'x 585 (D.C. Cir. 2015), and Plaintiff thus had available to him constitutionally sufficient procedural means to challenge his termination and his placement in leave-without-pay status.  *See, e.g.*, D.C. Code § 1-616.52(b) (allowing for an appeal from a removal with the District's Office of Employee Appeals); D.C. Mun. Regs. tit. 6-B, § 1625 (outlining appeal rights for enforced leave actions).

### B.    Plaintiff Fails to State a Whistleblower Claim (Count IV).

The Amended Complaint quotes the Health Director citing Plaintiff's email to Ms. Grant as grounds for firing him, and concludes based on this representation that he was terminated for making a protected communication under the D.C. Whistleblower Protection Act (DCWPA). Am. Compl. ¶¶ 167–74.  Plaintiff now tries yet again to amend his pleading through his Opposition, relying on "other protected disclosures to officials."  Pl.'s Opp'n at 38.  This is improper, but also unavailing.  No disclosure could save Plaintiff's claim because the statute of limitations lapsed before he filed his initial complaint, a point that the District raised in its moving brief, Def.'s Mot. at 19, but that the Opposition ignores.  Nor are any of Plaintiff's various communications protected communications under the DCWPA; his many complaints about workplace grievances and petty injustices amount, charitably, to complaints of mismanagement not rising to the level of "gross mismanagement," D.C. Code § 1-615.52(a)(6)(A), and in any event, he did not "reasonably" believe that his communications evidenced qualifying conduct because no "disinterested observer with knowledge of the essential facts known to and readily ascertainable by [Plaintiff] could reasonably conclude that the actions of the government evidence illegality, gross abuse, etc." *Johnson v. District of Columbia*, No. 20-CV-2944 (RC), 2024 WL 1328437, at *6 (D.D.C. Mar. 28, 2024).

C.     **Plaintiff's Statutory and Tort Claims Fail (Counts V through XV).**

Plaintiff does not contest, and thus concedes, that his CMPA and D.C. Human Rights Act (DCHRA) claims are time-barred.  *See* Def.'s Mot. at 22.  Nor does he persuasively address his failure to exhaust his administrative remedies under the CMPA.  Instead he labors under the misapprehension that bringing claims under § 1983 for the same conduct excuses a failure to exhaust, thus permitting him to bootstrap his District law claims together with his constitutional claims.  *See* Pl.'s Opp'n at 39.  These are distinct claims, each with their own prerequisites (*Monell* liability for § 1983; administrative exhaustion for the CMPA), and Plaintiff fails to meet any of them.

Plaintiff's remaining arguments fare no better.  He insists that his common law tort claims related to the workplace fall outside the CMPA umbrella, side-stepping the large body of binding precedent holding that tort claims connected to a District employee's employment require CMPA exhaustion.  *See Hawkins v. Hall*, 537 A.2d 571 (D.C. 1988) (affirming dismissal of employee's conversion claim for failure to exhaust administrative remedies under the CMPA); *District of Columbia v. Thompson*, 593 A.2d 621 (D.C. 1991) (finding employee's claims for defamation and intentional infliction of emotional distress were precluded because the CMPA provided an administrative and judicial system to review such claims); *Baker v. District of Columbia*, 785 A.2d 696 (D.C. 2001) (holding that CMPA provided exclusive remedy for litigation of employee's mental distress and defamation claims); *Stockard v. Moss*, 706 A.2d 561 (D.C. 1997) (plaintiff's slander claim subject to procedures set forth in CMPA).

Plaintiff reiterates his DCHRA discrimination claims but again fails to point to any factual assertion from his Amended Complaint showing a nexus between his gender, orientation, or religion and any government action.  *See* Opp'n at 40.  He merely insists that the District's different handling of Ms. Grant's complaints (based on Plaintiff's harassing behavior over many

months) and his complaints (based on his theory that "two maniacal and mentally disturbed employees" were out to get him, *id.* at 42) could only be based on his statutorily protected characteristics or his ostensibly DCWPA-protected disclosure.  *See id.* at 40–42.  This surmise is too large a leap to survive a motion to dismiss without at least some factual heft permitting an inference of discrimination, yet in 66 pages and 251 paragraphs, the Amended Complaint fails to provide any.  *Kowal v. MCI Comms. Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (court not bound to adopt "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint").  Finally, although he again insists that he complied with the District's notice requirement under D.C. Code § 12-309, Plaintiff offers no explanation for his failure to correct course after the Office of Risk Management provided guidance on the appropriate way to submit a notice of claim.  *See* Pl.'s Opp'n at 43–44.

## CONCLUSION

For these reasons, and the reasons set forth in the District's moving brief, the Court should grant the District's motion and dismiss the Amended Complaint with prejudice.

Date:  September 5, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
LIRAN KOROPITZER [90005151]
400 6th Street, NW
Washington, D.C. 20001

(202) 309-8882
david.jastrab@dc.gov

*Counsel for Defendant District of Columbia*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2024, I caused a copy of the Reply in Support of

Defendant District of Columbia's Motion to Dismiss the Amended Complaint to be served on

Plaintiff *pro se* via mail at the following address:

Baron Jamal Bell
12212 Asbury Drive
Fort Washington, MD 20744

*/s/ David B. Jastrab*
DAVID B. JASTRAB
Assistant Attorney General