UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BARON JAMAL BELL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-2036 (RC) |
| | : | | |
| v. | : | Re Document No.: | 22 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Baron Jamal Bell sued the District of Columbia *pro se* following his termination from the Department of Health. This Court previously granted the District's motion to dismiss Bell's original complaint as unclear and overly long in violation of Federal Rule of Civil Procedure 8. Bell then filed a 15-count Amended Complaint alleging various violations of 42 U.S.C. § 1983, the D.C. Whistleblower Protection Act ("DCWPA"), the D.C. Human Rights Act ("DCHRA"), and the D.C. Comprehensive Merit Personnel Act ("CMPA"), as well as five theories under D.C. tort law. The District moves to dismiss once more, arguing that the Amended Complaint also violates Rule 8 and that Bell fails to state a claim under any of his theories. The Court agrees that Bell fails to state a claim for relief under § 1983 and declines to exercise supplemental jurisdiction over his remaining D.C. law claims.

### II. FACTUAL BACKGROUND

Bell is a Black man who worked for the District of Columbia Department of Health's HIV/AIDS, Hepatitis, STD and TB Administration ("HAHSTA") for four years prior to his termination. Am. Compl. ¶ 10, ECF No. 17. In January 2021, while participating in an Anti-

Racism Group organized by a HAHSTA administrator, he believed that he witnessed a coworker, who was a Black woman, being bullied over email by another coworker, Ivan Eaton. *Id.* ¶ 12. Bell alleges that during this incident, Eaton "accused" the coworker of "making no sense." *Id.* Bell later emailed the Anti-Racism Group "demanding the incident be addressed," and after no action was taken Bell filed a report with the Department of Health's Employee and Labor Relations Manager. *Id.* ¶ 13. He states that this report was not investigated. *Id.* ¶ 14.

Bell alleges that Eaton launched a retaliation plot in response to these reports, which resulted in the Employee and Labor Relations Manager requesting to meet with Bell about "a communication" he wrote to Eaton in December 2020. *Id.* ¶ 15. During that meeting, the manager "informed" Bell "that as a condition of his continued employment, he must submit an affidavit denouncing any intent on killing, maiming, murdering, or injuring any DC government officials or employees." *Id.* ¶ 16. Bell's supervisor later shared his understanding that Bell had "threatened to kill" Eaton. *Id.* ¶ 18. Bell was then summoned to four mediation meetings between April 28, 2021, and June 24, 2021, to address allegations that he created a hostile work environment for a coworker, Sherita Grant. *Id.* ¶¶ 22–29.

On July 9, 2021, Bell filed a 17-page complaint with the District of Columbia Department of Human Resources, and he alleges that he received no response. *Id.* ¶¶ 30–33. On the same day, Bell "inform[ed] his supervisor that he [could not] perform in such a hostile work environment" and requested unpaid extended leave. *Id.* ¶ 34. On July 27, 2021, that request was denied, and Bell was placed on "absent without leave (AWOL)" status the following day because he had not been reporting to work. *Id.* ¶¶ 35, 37. On December 14, 2021, the District sent him a proposed separation letter for job abandonment, to which he responded by "notifying the Defendant of his hostile and dangerous work environment." *Id.* ¶¶ 45–46.

On June 2, 2022, the District informed Bell that due to a procedural error, his proposed separation was being rescinded. *Id.* ¶ 53. On that same day, Grant sent Department of Health Director LaQuandra Nesbitt a 19-page email Bell had sent to her personal email address. *See id.* ¶ 56; Ex. 3 to Def.'s Mot. Dismiss, ECF No. 22-1.[1] In that email sent on June 1, 2022, Bell accused Grant of lying, chastised her at length, and discussed "those whores in the hood from [her] childhood," among numerous other topics. Ex. 3 to Def.'s Mot. Dismiss at 7. The email also referenced violence. One exclamation included, "[y]ou are the mother of a son who has been convicted of murder and you want to play with violence Sherita?" *Id.* at 9. After Grant responded that Bell should "[g]et [h]elp," Bell replied that he hoped Grant would "be confident in [her] TRUTH," "[f]or when we have no fear of TRUTH then we are prepared to meet our Lord on the Day of Reckoning." *Id.* at 3. Some time after Director Nesbitt received this email, Bell was instructed not to report to work. Am. Compl. ¶ 60.

---

[1] A court considering a motion to dismiss is generally precluded from considering "matters outside the pleadings" unless the motion is converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, "[a] district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). The document must be "referred to in the complaint and . . . integral to [the plaintiff's] claim." *Id.* (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)); *see also Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (explaining that courts may consider "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss"). The Amended Complaint quotes from the June 1, 2022, email to Grant and explains that the message led to recission of the instruction to return to work and ultimately Bell's termination. *See* Am. Compl. ¶¶ 55–59. Bell's Fourth Amendment and whistleblower claims additionally rely on the document. *See id.* ¶¶ 167–74, 107–15. Furthermore, Bell does not dispute that the email is authentic in his opposition to the District's motion to dismiss. *See* Pl.'s Opp'n at 11–12. As such, the Court concludes that the Amended Complaint specifically references the email and that it is integral to Bell's claim. The Court may thus consider the contents of the email in resolving the motion to dismiss.

On July 20, 2022, Bell received a final summary removal notice from Director Nesbitt. *Id.* ¶¶ 70–74. That notice indicated that the Department of Health's summary removal action issued on June 6, 2022, "is the appropriate resolution of this matter." Ex. 4 to Def.'s Mot. Dismiss at 2.[2] "Accordingly, your last official day with the District of Columbia government will remain June 6, 2022." *Id.* Director Nesbitt reasoned that Bell's conduct constituted an "immediate hazard to the agency" and its staff and that his actions were "detrimental to the public health safety, or welfare." *Id.* She also cited Bell's off-duty conduct and use of abusive or otherwise unacceptable language. *Id.* That letter informed Bell that he had "the right to challenge" his summary removal through the Office of Employee Appeals ("OEA"). *Id.* at 4. The record contains no indication that Bell appealed his termination to the OEA.

Bell initiated this lawsuit on July 14, 2023, filing a 136-page, 14-count complaint against the District of Columbia. *See* Am. Compl., ECF No. 1. On June 5, 2024, this Court granted the District's motion to dismiss on the grounds that Bell's complaint was unclear and overly long, affording him the opportunity to amend. *See* Mem. Op. at 14, ECF No. 16. Bell filed that Amended Complaint on July 5, 2024, listing 15 counts against the District. *See generally* Am. Compl.

The Amended Complaint includes claims under 42 U.S.C. § 1983 alleging violations of the First, Fourth, and Fifth Amendments to the Constitution, including procedural and substantive due process violations. *See id.* ¶¶ 91–166 (Counts One, Two, and Three). Bell alleges a violation of the D.C. Whistleblower Protection Act for his report that a coworker was

---

[2] The Notice of Final Decision of Summary Removal is quoted at length in Bell's Amended Complaint. *See* Am. Compl. ¶¶ 70–84. As the Amended Complaint necessarily relies on the notice, and Bell does not contest its validity, the Court may consider the full document at the motion-to-dismiss stage. *See Banneker Ventures*, 798 F.3d at 1133; *Hinton*, 624 F. Supp. 2d at 46.

4

being bullied and for his subsequent complaints. *See id.* ¶¶ 167–74 (Count Four). He alleges that he experienced discrimination under the D.C. Human Rights Act based on sex, sexual orientation, and religion. *See id.* ¶¶ 175–92 (Counts Five, Six, and Seven). Relatedly, he also alleges constructive discharge and a hostile work environment. *See id.* ¶¶ 205–15 (Counts Nine and Ten). Bell claims that the District violated the CMPA by placing him on absent without leave status and then terminating him. *See id.* ¶¶ 193–204 (Count Eight). Finally, Bell claims injury under five tort theories, including intentional infliction of emotional distress, defamation, invasion of privacy and false light, negligence, and wrongful termination. *See id.* ¶¶ 216–51 (Counts Eleven through Fifteen). The District filed a motion to dismiss, arguing that the Amended Complaint remains too long and convoluted, and that Bell fails to state a claim on the merits. *See* Def.'s Mot. Dismiss, ECF No. 22. Bell opposes the motion to dismiss. *See* Pl.'s Opp'n, ECF No. 25.[3]

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 12(b)(6)). In considering such a motion, the complaint must be construed "liberally in

---

[3] Bell moves to file a surreply. *See* Mot. for Leave to File Surreply, ECF No. 27. The decision to grant or deny leave to file a surreply "is entrusted to the sound discretion of the district court." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012) (citing *Akers v. Beal Bank,* 760 F. Supp. 2d 1, 2 (D.D.C. 2011)). "A court determining whether to allow a surreply considers whether the reply raises new arguments, whether the proposed surreply would be helpful to the resolution of the pending motion, and whether the other party would be unduly prejudiced." *Jackson v. Starbucks Corp.*, No. 19-cv-1487, 2022 WL 888180, at *3 n.2 (D.D.C. Mar. 25, 2022) (citing *Glass v. Lahood*, 786 F. Supp. 2d 189, 230–31 (D.D.C. 2011)). Here, the District does not oppose the motion, the surreply purports to address new arguments raised in the District's reply, and the District would not be prejudiced were leave to file granted. The Court therefore grants Bell's motion to file the surreply.

the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (cleaned up) (quoting *Kowal*, 16 F.3d at 1276).

Thus, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.* (citing *Twombly*, 550 U.S. at 555).  Similarly, there is no obligation to accept a plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  The Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

Finally, because Bell is proceeding *pro se*, the Court will construe the Amended Complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Thus, the Court may "examine other pleadings to understand the nature and basis of [the plaintiff's] *pro se* claims" as alleged in his complaint.  *Gray v. Poole*, 275 F.3d 1113,

1115 (D.C. Cir. 2002).  Nevertheless, even a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and must "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).  Therefore, despite the liberality afforded *pro se* complaints, the Court "need not accept inferences unsupported by the facts alleged in the complaint or 'legal conclusions cast in the form of factual allegations.'"  *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

## IV.  ANALYSIS

The Court first considers Bell's civil rights claims brought under 42 U.S.C. § 1983, concluding that he fails to plausibly plead municipal liability.  Having dealt with these federal law claims, the Court considers whether to exercise supplemental jurisdiction over Bell's twelve remaining state law causes of action under the DCWPA, DCHRA, CMPA, and D.C. tort law.  The Court determines that these claims are appropriate for resolution by the D.C. Superior Court in the first instance.

The District encourages the Court to dismiss Bell's Amended Complaint as inconsistent with Rule 8.  *See* Def.'s Mot. at 7–9.  As the Court observed in its prior memorandum opinion, a lengthy and confusing complaint can frustrate the defendant's and the Court's abilities to discern the essential facts underlying a plaintiff's legal claims.  *See* Mem. Op. at 10.  The Court continues to experience some difficulty determining exactly which facts underly which counts of the Amended Complaint.  The Court can sufficiently determine the nature of Bell's claims, however, with respect to his allegations of municipal liability against the District.  The Court thus declines to dismiss the Amended Complaint as inconsistent with Rule 8.

### A. Section 1983 Claims

Bell claims that the D.C. Department of Health violated his First Amendment rights by penalizing him for speaking on a matter of public concern and engaging in religious expression, *see* Am. Compl. ¶¶ 91–106, that it violated his Fourth Amendment rights by initiating an investigation based on the email Grant forwarded, *see* Am. Compl. ¶¶ 107–15, and that it violated his rights under the Fifth Amendment Due Process Clause by failing to comply with the CMPA at various times, *see* ¶¶ 116–66. The District moves to dismiss these claims because Bell fails to plead municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and the claims fail on their merits. *See* Def.'s Mot. Dismiss at 1–19. Bell asserts that he pleads municipal liability because Director Nesbitt is a final policymaker and the Department of Health acted with deliberate indifference. *See* Pl.'s Opp'n at 18–20. The Court concludes that Bell does not state facts sufficient to plead *Monell* liability.

To establish that a municipal entity is liable for a constitutional violation under § 1983, a plaintiff must show that the local government's official policy or custom was "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694. The D.C. Circuit has recognized four pathways to *Monell* liability, under which a plaintiff must point to: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*,

unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Parker v. District of Columbia*, 850 F.2d 708, 711–12 (D.C. Cir. 1988) (*quoting City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

Bell suggests that the District of Columbia is liable for constitutional violations because Director Nesbitt fired him, and she has "final policymaking authority" under D.C. law. *Triplett*, 108 F.3d at 1453; *see also id.* ("The issue of final policymaking authority is one of state law."); Pl.'s Opp'n at 18–20. Bell conflates a final decision-maker with a final *policy*-maker. He points to provisions of D.C. law that empower Director Nesbitt to, for instance, supervise the Department of Public Health and remove employees. *See* Pl.'s Opp'n at 19–20 (citing D.C. Mun. Regs. tit. 6-B § 1616.3; D.C. Code § 7-153; D.C. Code § 1-523.01; D.C. Code § 1-610.51). Yet these are not "specific provisions in the D.C. Code granting the director authority to promulgate rules for the administration of [her] respective department with regard to" personnel matters. *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011); *see also Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 343 (D.D.C. 2018) (finding that fire chief was not final policymaker because "Chapter 4 of Title 5 of the D.C. Code . . . does not delegate to the Fire Chief the kind of broad employment, personnel, and discipline-related policymaking authority"). Although Director Nesbitt may decide to terminate an employee, she lacks the power to make final D.C. government policy that can deprive an employee of his constitutional rights under *Monell*. *See Triplett*, 108 F.3d at 1453 (observing that the "authority to exercise discretion" is insufficient). D.C. Code § 7-153, for instance, places the Department "under the supervision and direction of a Director who shall be appointed by the Mayor" but does not grant her the authority to make policy with regard to personnel issues. In addition, Bell points to D.C. municipal regulations regarding summary suspension or removal of personnel. *See* Pl.'s Opp'n

9

at 19. There is no indication that Director Nesbitt promulgated these regulations, which are the same ones she referred to when upholding Bell's summary removal. *See* Ex. 4 to Def.'s Mot. Dismiss. She was therefore "constrained by policies not of [her own] making" in the isolated decision of whether or not to terminate Bell. *Byrd*, 807 F. Supp. 2d at 75. Bell thus pleads insufficient facts to show that his alleged constitutional injuries arose from the actions of a final policymaker in the D.C. government.

Bell also contends that the District acted with deliberate indifference by failing to respond to his "18-months of pleading for substantive and procedural due process." Pl.'s Opp'n at 20. "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference towards the constitutional rights of persons in its domain.'" *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89 & n.7 (1989)). Deliberate indifference "is an objective standard, 'determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act.'" *Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) (*quoting Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prevail, a plaintiff must show more than simple or even heightened negligence; the District's indifference must be conscious, or at least reckless. *See Canton*, 489 U.S. at 389.

Even assuming that the District of Columbia's actions in this case were unconstitutional, Bell pleads no facts showing that they arose from the city's failure to train, properly supervise, or correct any pervasive unconstitutional actions of its employees. Nor does he demonstrate that

officials were conscious of any shortcomings in a manner that might render those failures to be official policy or custom within the District. *See Connick*, 563 U.S. at 62 (requiring city officials to be on "notice" that training is deficient). Instead, he points to his own case—a "single incident of" alleged "unconstitutional activity"—as evidence of a broader policy. *Parker*, 850 F.2d at 711–12; *see also* Pl.'s Opp'n at 20. This is insufficient, as "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick*, 563 U.S. at 62; *see also Harvey*, 798 F.3d at 331–33 (finding deliberate indifference after the District "disregard[ed] the medical needs of involuntarily committed mental patients" for decades); *Watson v. District of Columbia*, No. 23-cv-1670, 2024 WL 3471262, at *5–6 (D.D.C. July 19, 2024) (denying motion to dismiss where complaint stated facts justifying allegation of improper training); *Bah v. District of Columbia*, No. 23-cv-1248, 2024 WL 983329, at *6 (D.D.C. Mar. 7, 2024) (denying motion to dismiss where complaint stated that reports and memoranda made D.C. jail aware of inadequate staffing and supervision leading to violation of plaintiff's Fifth Amendment rights). Bell alleges no such widespread risks of constitutional harm within the D.C. government of which policymakers were made aware. As such, he cannot rest *Monell* liability on a deliberate indifference theory.

    The Court concludes that Bell fails to plead municipal liability under *Monell*, as he does not show that the District was "the moving force of" any "constitutional violation." *Monell*, 436 U.S. at 694. The District therefore cannot be held liable for any constitutional violations that its employees may have committed. The Court thus grants the District's motion to dismiss as to Counts One through Three. Because Bell does not establish *Monell* liability, the Court does not determine whether any underlying constitutional violations in fact occurred.

## B. Remaining State Law Claims

Bell asserts that the Court has supplemental jurisdiction over his remaining claims brought under D.C. law. *See* Pl.'s Opp'n at 13; Am. Compl. at 2.[4] "When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise pendent, or supplemental, jurisdiction over related claims under state law." *Women Prisoners of District of Columbia Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996); *see also* 28 U.S.C. § 1367. There is a two-part test for determining when it is appropriate for a federal district court to exercise supplemental jurisdiction. First, the Court determines "whether the state and the federal claims 'derive from a common nucleus of operative fact'; if they do, the court has the *power*, under Article III of the Constitution, to hear the state claim." *Women Prisoners*, 93 F.3d at 920 (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Second, "even if it concludes that it has that power, the district court must then decide whether to exercise its *discretion* to assert jurisdiction over the state issue." *Id.* (citing *United Mine Workers of America*, 383 U.S. at 726). "State and federal claims share a common nucleus of operative facts if the claims are such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Chelsea Condo. Unit Owners Ass'n v. 1815 A St., Condo. Group, LLC*, 468 F. Supp. 2d 136, 141 (D.D.C. 2007) (citing *United Mine Workers of America*, 383 U.S. at 725). "A common nucleus of operative facts exists when there is a link or overlap between the facts of the state and federal claims." *Id.* (citing *Women Prisoners*, 93 F.3d at 921).

---

[4] The Court observes that "the District is not subject to the diversity jurisdiction of the federal courts." *Long v. District of Columbia*, 820 F.2d 409, 414 (D.C. Cir. 1987).

12

Courts determining whether to exercise supplemental jurisdiction after federal claims have been dismissed must consider "judicial economy, convenience, fairness, and comity." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005).  While the decision is left to each court's discretion, *see United Mine Workers*, 383 U.S. at 726, when all federal claims are eliminated before trial, the "balance of the[] factors" weighs toward declining to exercise jurisdiction over the remaining state law claims.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  As such, the D.C. Circuit has identified a clear preference for courts to exercise their discretion to remand state claims back to District of Columbia courts once all federal questions have "left the building."  *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 400 (D.D.C. 2016) (quoting *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014)).

In Bell's case, these factors weigh against the exercise of supplemental jurisdiction over his remaining state law claims.  The three federal § 1983 claims over which the Court exercised federal question jurisdiction are dismissed, and the remaining twelve claims are based entirely in District of Columbia law.  The D.C. Superior Court is better positioned to resolve these issues regarding the DCWPA, DCHRA, and CMPA in the first instance.  This also includes the CMPA's potential preclusion of Bell's common law tort claims.  *See* Def.'s Mot. at 21.  Furthermore, discovery in this case has not yet begun, and the case has not progressed in federal court past the District's motions to dismiss.  The Court thus "decline[s] to exercise supplemental jurisdiction" because it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The Court additionally determines that the D.C. law claims at issue here "substantially predominate[]" over the federal claims it has dismissed.  *Id.* § 1367(c)(2).

## V.  CONCLUSION

For the foregoing reasons, the District of Columbia's motion to dismiss is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 25, 2025                                                                                      RUDOLPH CONTRERAS
                                                                                                                            United States District Judge